**William J. HEAPHY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 401–83C.**

United States Claims Court.

Aug. 9, 1991.

Neil B. Kabatchnick, Washington, D.C., for plaintiff.

John S. Groat, Civ. Div., Dept. of Justice, Washington, D.C., with whom were Asst. Atty. Gen. Stuart M. Gerson and Director David M. Cohen, for defendant.

## OPINION

HORN, Judge.

Plaintiff, William J. Heaphy, a former Air Force officer, brought this action seeking monetary relief in the form of active duty pay and allowances of an officer in the grade of Major and the correction of

certain United States Air Force records relating to plaintiff. The case is now before this court on defendant's Motion to Dismiss for Failure to State a Justiciable Claim, as supplemented by the material submitted by the government in the defendant's Motion for Leave to Supplement Defendant's Motion to Dismiss for Failure to State a Claim and defendant's Supplemental Memorandum. In the later submitted papers, the government alleges that the United States Claims Court also lacks subject matter jurisdiction to hear the case. Defendant contends that plaintiff's retirement as a commissioned officer in the United States Air Force was voluntary, and, therefore, that the United States Claims Court lacks jurisdiction over the case. The plaintiff, however, claims that certain events leading to his resignation made his separation involuntary and that, therefore, this court is vested with jurisdiction.

After a thorough review of all the pleadings submitted, and after the oral argument, the court concludes that plaintiff's resignation was voluntary. This court, therefore, does not have jurisdiction to hear plaintiff's case. Accordingly, defendant's Motion to Dismiss for lack of subject matter jurisdiction is, hereby, GRANTED.

## BACKGROUND

Plaintiff was commissioned a 2nd Lieutenant (temporary and permanent) in the United States Air Force (USAF) on December 21, 1962. He was promoted to 1st Lieutenant (temporary) on June 21, 1964 and to 1st Lieutenant (permanent) on December 21, 1965. On May 23, 1966, plaintiff was appointed a 1st Lieutenant, Regular Air Force. He was promoted to Captain (temporary) on February 4, 1967 and to Captain (permanent) on December 21, 1969. On October 1, 1973, plaintiff was promoted to Major (temporary).

Following his failure to be selected for promotion to the permanent grade of Major by two Department of the Air Force, regular selection boards, convened on August 18, 1975 and November 8, 1976, plaintiff was given the option of mandatory retirement, effective June 30, 1977, as required by former 10 U.S.C. § 8303 (1976), and AFR 36–12, ¶ 29, or the option of voluntary resignation, for the purpose of enlisting in the Air Force, on any day prior to June 30, 1977 as allowed by AFR 36–12, ¶ 16e. Faced with this choice, plaintiff requested voluntary resignation which would allow him to "continue his military career" in enlisted status. On June 29, 1977, plaintiff was honorably discharged from commissioned status with the USAF, pursuant to his resignation and AFR 36–12, ¶ 16e. At the time of his discharge, plaintiff had served a total of 14 years, 9 months and 4 days in the Air Force.

On July 15, 1977, after resigning, plaintiff enlisted in the USAF in the grade of Sergeant (E–4). He was promoted to Staff Sergeant (E–5) on August 1, 1978 and to Technical Sergeant (E–6), effective July 1, 1981. Plaintiff served on active duty in enlisted status until he was released from active duty on October 31, 1982 and retired, having served a total of 20 years, 0 months, and 21 days in the military.

Plaintiff filed his original complaint with this court on June 17, 1983 seeking monetary relief in the form of active duty pay and allowances of an officer in the grade of Major, USAF, from June 29, 1977, the date he was discharged from commissioned status, to November 1, 1982, the date plaintiff was retired from active service. Plaintiff also seeks the correction of USAF records under the provisions of 28 U.S.C. § 1491(a)(2) (1988), including, but not limited to, correction of the records to show that plaintiff was selected for promotion to the grade of Major by the August 18, 1975 and November 8, 1976 regularly constituted selection boards. The original complaint, filed on June 17, 1983, was accompanied by a Motion to Suspend Proceedings to permit the plaintiff to seek administrative remedies, which was allowed, without objection, on July 6, 1983. The suspension was vacated on August 9, 1989, at the plaintiff's request.

During the fall of 1986, after a number of requests by Heaphy, plaintiff's Officer Effectiveness Reports (OERs) for 1972 to 1973, for the periods of October 1, 1973 to

December 12, 1975, and those from 1976 to 1977, were voided. Subsequently, two special selection boards (SSBs) were established pursuant to 10 U.S.C. § 628(b) (1988), as directed by a letter of instruction dated August 7, 1986. The decisions of the 1975 and 1976 regularly constituted selection boards were reconsidered and plaintiff was re-evaluated for promotion to the permanent grade of Major. Both SSBs were convened on March 17, 1987. A letter, dated May 26, 1987, informed the plaintiff that he had been reconsidered for promotion, but not selected. On June 3, 1987, counsel for plaintiff requested information/documentation relating to the promotion request, including a "sampling of records."

Plaintiff's July 15, 1987 request for a *de novo* review by the Air Force Board for Correction of Military Records (AFBCMR) was denied on July 8, 1989. The plaintiff appealed this decision to the Secretary of the Air Force on October 26, 1988. By letter dated December 12, 1988, counsel for plaintiff was advised that the appeal had been denied.

On August 22, 1989, plaintiff filed an Amended Complaint in this court to revise his Original Complaint of June 17, 1983. Defendant filed a Motion to Dismiss for failure to state a claim on January 29, 1990. On February 4, 1991, defendant filed a Motion to Supplement its Pending Motion to Dismiss, claiming the United States Claims Court lacked jurisdiction to hear the case because plaintiff had voluntarily resigned.[1] Defendant cited to *Sammt v. United States*, 780 F.2d 31 (Fed.Cir.1985), for the proposition that a service member's election to resign, prior to his discharge for non-selection for promotion, deprives this court of jurisdiction to consider the legality of the non-selection. A Reply was filed by the plaintiff on February 4, 1991 and defen-

dant's Response to Plaintiff's Reply was filed February 7, 1991. On February 8, 1991, oral argument was conducted as scheduled. Plaintiff, thereafter, was allowed to file a Post–Argument Reply to defendant's Supplemental Memorandum.

## DISCUSSION

In the Supplement to its Motion to Dismiss, defendant has raised a challenge to the jurisdiction of this court based on an argument that plaintiff's voluntary resignation eliminated his ability to bring the instant lawsuit. Defendant cites principally to the *Sammt* decision in support of its position. Plaintiff has responded by arguing that the government's reliance on the *Sammt* decision is misplaced because the jurisdictional issue was not raised at the administrative level and, thus, should not be considered timely. In support of his position, plaintiff cites to the Order in *Borgford*, 221 Ct.Cl. 920, 618 F.2d 124 (1979). In *Borgford*, the court found for the plaintiff and stated: "where, however, he invokes the Correction Board's jurisdiction and fails to present a particular claim to the Board ... ordinarily a party who has gone to the Board should not be permitted to raise in this court issues he could have raised before the Board and the Board could have entertained—at least [not] in the absence of a compelling reason for his failure to do so." *Id.*, at 923, 618 F.2d 124.

The facts in *Borgford*, however, are clearly distinguishable from the instant case. The claim at issue in *Borgford* was for the correction of certain OERs which the plaintiff did not raise at the Correction Board hearing. Here, the claim involves a challenge to the court's subject matter jurisdiction. Rule 12(h)(3) of the Rules of the United States Claims Court (RUSCC) clearly states: "[w]henever it appears by sug-

---

1. Although the oral argument in the case was scheduled for February 8, 1991, the defendant's Motion to Supplement the Motion to Dismiss was filed only four days earlier. Oddly enough, defendant's counsel has stated that only during the course of preparing for the oral argument did he notice a reference to the fact that the plaintiff, Mr. Heaphy, resigned voluntarily. Defendant, therefore, filed the supplemental mate-

rials because it is the position of the defendant that if Mr. Heaphy's resigned voluntarily, this court does not have jurisdiction to hear the case. Equally remarkable, in his Post–Argument Supplemental Reply, plaintiff also indicates he did not have a copy of Heaphy's resignation papers at the time of the filing of plaintiff's February 4, 1991 Reply to Defendant's Supplemental Memorandum.

**700**

gestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." RUSCC 12(h)(3).[2] It is basic law that a question of subject matter jurisdiction can be raised at any time, by motion or in the answer, it may even be raised in a motion for relief from final judgment or argued for the first time on appeal and cannot be waived. See 4 Wright, Miller and Cooper, Federal Practice and Procedure § 1393 (1973). As stated by the Supreme Court in *Gainesville v. Brown–Crummer Invest. Co.*, 277 U.S. 54, 59, 48 S.Ct. 454, 456, 72 L.Ed. 781 (1928): "Of course a question of jurisdiction can not be waived. Jurisdiction should affirmatively appear, and the question may be raised at any time (citations omitted)." Although this court finds it unusual that neither the plaintiff nor the defendant had a copy of Heaphy's resignation until very late in the case, this court cannot ignore the challenge to its jurisdiction, despite the fact that it was raised in the eleventh hour.

█ The initial issue in dispute is whether Heaphy's resignation was involuntary. In *Dorl v. United States*, 200 Ct.Cl. 626 (1973), *cert. denied*, 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973), *reh'g denied*, 415 U.S. 939, 94 S.Ct. 1459, 39 L.Ed.2d 498 (1974), the court found that: "In order for a resignation to be involuntary, there must ordinarily be external coercion or duress...." Moreover, the *Dorl* court pointed out that the absence of the word "voluntary" in the resignation papers was "immaterial." By analogy, in a civilian, government pay case, the court in *Christie v. United States*, 207 Ct.Cl. 333, 338, 518 F.2d 584, 587 (1975), found that an employee's resignation is presumed to be voluntary. We, likewise, find it reasonable to apply a similar rebuttable presumption that a resignation is deemed to be voluntary in military pay cases.

In *Sammt*, 780 F.2d at 31, the Court of Appeals for the Federal Circuit ordered that the appeal of Army Major Sammt be dismissed because the Claims Court does not have jurisdiction over a party if the military person's retirement was voluntary. Moreover, the *Sammt* court held, as it had previously done in civilian pay cases, that the exercise of an option to retire is not rendered involuntary by the imminent imposition of a less attractive alternative, absent deception, coercion or duress.[3] Furthermore, in *Tannehill v. United States*, 18 Cl.Ct. 296 (1989), this court adopted the *Sammt* reasoning for military pay cases and dismissed the *Tannehill* case because the officer in that case retired voluntarily and, therefore, deprived this court of jurisdiction to entertain his cause of action.

In order to determine whether a retirement in a particular case was voluntary, a court must examine the circumstances surrounding the retirement to test the ability the plaintiff had to exercise free choice. *Tannehill*, 18 Cl.Ct. at 300; *Scharf v. Department of Air Force*, 710 F.2d 1572, 1574 (Fed.Cir.1983) (citing *Perlman v. United States*, 203 Ct.Cl. 397, 407–08, 490 F.2d 928, 933 (1974)); *Covington*, 750 F.2d at 941–42). Certain circumstances have been recognized which rebut the presumption that a resignation was voluntary. For example, if an employee's resignation is premised on misinformation given by an agency official and the employee materially relies on it to his detriment, then the resignation is considered involuntary. *Scharf*, 710 F.2d at 1575; *Bell v. United States*, 23 Cl.Ct. 73, 76 (1991). Additionally, if an employee submits a resignation under time pressure caused by government delay, *Perlman*, 203 Ct.Cl. at 406, 490 F.2d at 932–33, or fails to understand the situation due to mental incompetence, *Manzi v. United States*, 198 Ct.Cl. 489, 505 (1972), then the resignation can be found to have been involuntarily submitted. Duress or coercion by Government representatives

2. The same principle is articulated in Rule 12(h)(3) of the Federal Rules of Civil Procedure.

3. In *Sammt*, 780 F.2d at 32, the court cited to *Griessenauer v. Department of Energy*, 754 F.2d 361, 364 (Fed.Cir.1985); *Covington v. Depart-*

*ment of Health & Human Services*, 750 F.2d 937, 942 (Fed.Cir.1984) (dicta); *Taylor v. United States*, 219 Ct.Cl. 86, 92, 591 F.2d 688, 692 (1979); *Christie*, 207 Ct.Cl. at 338, 518 F.2d at 587–88.

can also render a retirement involuntary, if the action is produced or coerced by wrongful government conduct. *Schultz v. United States Navy,* 810 F.2d 1133 (Fed.Cir. 1987); *Roskos v. United States,* 213 Ct.Cl. 34, 40, 549 F.2d 1386, 1389–90 (1977). In *McGucken v. United States,* 187 Ct.Cl. 284, 407 F.2d 1349 (1969), *cert. denied,* 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969), the court discussed the standard to determine whether a resignation was brought on by duress, and, therefore, should be found to have been involuntary. Citing *Fruhauf Southwest Garment Co. v. United States,* the *McGucken* court noted:

> ... three elements are common to all situations where duress has been found to exist. These are: (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party.... *Fruhauf Southwest Garment Co. v. United States,* 126 Ct.Cl. 51, 62, 111 F.Supp. 945, 951 (1953).

*McGucken,* 187 Ct.Cl. at 288–89, 407 F.2d at 1351.

The presumption that the resignation was voluntary is not overcome, however, by the fact that an employee is faced with an inherently unpleasant situation or that his choice is limited to two unpleasant alternatives, *Sammt,* 780 F.2d at 32; *Covington,* 750 F.2d at 942 (citing *Taylor v. United States,* 219 Ct.Cl. 86, 92, 591 F.2d 688, 692 (1979)). The courts have held, however, that "... the decision must ultimately be the employee's decision, not the government's...." *Covington,* 750 F.2d at 942.

■ Plaintiff Heaphy argues that his resignation was an aftermath of his non-selection for promotion and that he resigned only because it was a "regulatory" prerequisite under AFR 36–12, ¶ 16e, to his eligibility to re-enlist in the Air Force in order to continue his military career towards retirement privileges. As such, plaintiff argues his was a *"pro forma"* resignation, clearly distinguishable from the "purely voluntary" action taken in *Sammt.*

In the instant case, plaintiff, Heaphy, was confronted with a legitimate choice regarding whether to resign. Following his second non-selection for promotion to the permanent grade of Major, the Department of the Air Force sent plaintiff a letter which notified him that because he had been passed over for promotion twice, he would be subject to discharge not later than June 30, 1977. In the letter, he was also informed that if he desired to continue in the military "... you may voluntarily resign your regular appointment and after separation, enlist in the regular Air Force." The letter was accompanied by a Separation Fact Sheet which presented plaintiff with details on applicable rules and regulations and information on options available to plaintiff. These options included accepting mandatory retirement from the USAF, as prescribed by former 10 U.S.C. § 8303 and AFR 36–12, ¶ 29, or, voluntarily resigning, which would allow plaintiff the opportunity to continue his career in the USAF in enlisted status, as authorized by AFR 36–12, ¶ 16e, and await subsequent retirement. Not only was the plaintiff, Heaphy, given information on his situation by the USAF, but, his choices were fully set out in the letter, and attachment (Separation Fact Sheet), which referenced the applicable statutes and/or regulations.

Air Force Regulation (AFR) 36–12, ¶ 29 states that "... Regular officers in the grade of major ... who are considered for promotion ... and again [for the second time] fail of selection must be removed from the active list...." AFR 36–12, ¶ 29 (28 June 1973). As an alternative, plaintiff could, and ultimately did, elect to pursue the option included in follow AFR 36–12, ¶ 16e. This regulation states:

> A Regular commissioned officer may tender his resignation under this paragraph for the purpose of enlisting in the Regular Air Force when:
> (1) He receives official notification that he has twice failed of selection for promotion to his next higher permanent grade, and

(2) the letter of notification authorizes him to tender his resignation, in lieu of discharge with severance pay, for this purpose.

AFR 36–12, ¶ 16e (28 June 1973).

Plaintiff contends that the sole and exclusive reason for plaintiff's *"pro forma"* resignation was to follow the advice provided by the USAF and governing regulation, in order to permit plaintiff to "continue a military career" by his enlistment in the USAF for the purposes of attaining sufficient active military service to qualify for subsequent retirement. Plaintiff, therefore, argues that his resignation should be viewed as involuntary. We disagree. Plaintiff's contention and the facts surrounding his resignation simply describe the plaintiff's reason for choosing resignation over retirement, they do not render plaintiff's resignation involuntary. Faced with the clear option of mandatory retirement or voluntary resignation, plaintiff chose, on his own, to resign his commissioned status and enlist in the Air Force in the grade of Sergeant, under the provisions of AFR 36–12, ¶ 16e, in order to gain additional retirement benefits.

Plaintiff also attempts to argue that if his resignation was voluntary, then: "it is clear that the sole and exclusive reason for plaintiff's 'voluntary' resignation was that it was a regulatory prerequisite, under ¶ 16e, AFR 36–12, for his being eligible to enlist in the USAF in order to *'continue a military career'*" (emphasis in the original). It was true in plaintiff's case that given the duplicative non-selection for promotion, AFR 36–12, ¶ 29 directed his retirement. However, under AFR 36–12, ¶ 16e, plaintiff was given a choice to resign his commission and enlist in the Regular Air Force, in order for him to continue in the military to build towards his retirement. We also reject this argument offered by plaintiff. The requirement of first resigning his commission, prior to enlistment in the Regular Air Force, does not render plaintiff's choice to retire involuntary.

This court continues to believe, as it stated in *Tannehill*, 18 Cl.Ct. at 300, that the presumption of the voluntariness of a res-

ignation can be rebutted. However, in the instant case, as in *Tannehill*, the specific facts of the case at bar actually help to establish the fact that plaintiff's conscious, voluntary choice was resignation and enlistment over retirement.

In his Post–Argument Supplemental Reply, filed February 11, 1991, plaintiff also asserts that his resignation should be treated as involuntary because:

> there was no specific and affirmative recital in the resignation, or the notification of nonselection, or the "Fact Sheet," that, as a matter of law, plaintiff would be waiving any right to recourse, administrative and/or judicial, with respect to the error and injustice of the matters from which he sought relief under 10 U.S.C. § 1552 [1988]; 28 U.S.C. § 1491(a) and 28 U.S.C. § 1491(a)(2).

Moreover, plaintiff states that he "did not have the assistance of counsel when he tendered his resignation." Plaintiff seems to argue that the lack of notice or counseling regarding his rights, beyond the letter and Separation Fact Sheet, and the absence of legal counsel by the Air Force as to the consequence of plaintiff's resignation, should make his resignation involuntary. To be sure, "[a]n employee is not required to show an intent to deceive on the part of the agency in order for his retirement to be held involuntary. Rather, it is sufficient if the employee shows that a reasonable person would have been misled by the agency's statements," *Scharf*, 710 F.2d at 1575; *Tannehill*, 18 Cl.Ct. at 300, and that the plaintiff relied on the agency's misinformation. *Bell*, 23 Cl.Ct. at 75.

There is a major difference between the instant case and cases such as *Scharf*, and *Covington*, in which the courts have held a resignation was involuntary because of misinformation. Existing case law dictates that absent specific misinformation, deception or improper advice offered by a government agency, a resignation will not be found to have been involuntary for the purpose of jurisdiction. In *Scharf*, the resignation was held involuntary because of the agency's misleading advice that the petitioner's optional retirement would not af-

fect his subsequent disability retirement application. *Scharf,* 710 F.2d at 1575. In the *Covington* case, the petitioner's Reduction in Force (RIF) notice specifically advised him that he could appeal the RIF action to the Merit Systems Protection Board if he was of the opinion that his rights had been violated. The Court of Appeals for the Federal Circuit held that because the petitioner relied on the notice, his retirement could be classified as involuntary for the purpose of jurisdiction. *Covington,* 750 F.2d at 944.

In the case at bar, specific agency advice was not sought by plaintiff beyond the letter and attachments, which were sent to the plaintiff, and which fully and adequately informed Heaphy of his rights and his options. Plaintiff never argues that he was misled, deceived or misinformed by the USAF as to the consequences of his decision, or that he made his decision based on actual duress. In ‗act, the record demonstrates that the plaintiff was fully apprised of his rights and of their consequences, and that he made a knowledgeable, conscious decision to resign "in order to continue a military career." Plaintiff cannot be granted relief simply because he failed to more fully educate himself as to the law, and later wishes to revisit his voluntary choice. It is well-established that ignorance of the law is no excuse. *See United States v. Southland Corp.,* 760 F.2d 1366, 1372 (2d Cir.1985), *cert. denied,* 474 U.S. 825, 106 S.Ct. 82, 88 L.Ed.2d 67 (1985).

### CONCLUSION

For the reasons stated above, the court, hereby, GRANTS the defendant's Motion to Dismiss. The Clerk of the Court is ordered to enter judgement dismissing the complaint in this action.

IT IS SO ORDERED.