James E. LONGHOFER, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 92–661C.

United States Court of Federal Claims.

Oct. 6, 1993.

Glen A. Trimper, Alexandria, VA, attorney of record, for plaintiff.

Elizabeth A. Rinaldo, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

*Introduction*

This military pay case, filed on September 24, 1992, comes before the court on Defendant's Motion to Dismiss, filed on February 17, 1993, for lack of subject matter jurisdiction and, alternatively, for failure to state a claim upon which relief can be granted. RCFC 12(b)(1) and (4). Plaintiff, James E. Longhofer, seeks by his complaint reinstatement in the U.S. Army, promotion to the rank of Major General with pay, back pay, and correction and/or a purging of his military records. The alleged egregious conduct of defendant claimed by plaintiff is that he was improperly denied promotion, and was, as a consequence, selected for and forced into early retirement on August 31, 1988, based on his court-martial conviction which was subsequently set aside.

Conversely, in its motion to dismiss, defendant alleges that plaintiff's retirement from the Army was purely a voluntary act, and that, therefore, the United States Court of Federal Claims (CFC) lacks jurisdiction to hear this case given said circumstances. *Sammt v. United States*, 780 F.2d 31 (Fed.Cir.1985). Furthermore, defendant alleges that this court cannot grant the promotion relief sought by plaintiff because he has never been appointed to the higher position of Major General, and is, therefore, not entitled to neither that position, nor to the monetary emoluments thereof.

After a full and careful consideration of the briefs filed by the parties, and being fully advised in the premises, the court concludes, on this record, that it does not have subject matter jurisdiction to entertain plaintiff's claim, nor does plaintiff's complaint state a claim upon which relief can be granted.

*Facts*

Colonel James E. Longhofer, U.S. Army, Retired, began his military service career as an enlisted man in 1950. After serving on inactive status in the Naval Reserve, and on both inactive and active status in the Army National Guard and the Air Force, he began active duty in the Army in 1961. He received a commission as an officer in the National Guard in 1959, and by 1982, he had attained the rank of Colonel.

On or about May 9, 1985, Col. Longhofer was charged with disobedience, dereliction of duty, and conduct unbecoming an officer. He was convicted on said specifications, as charged, by court-martial on April 12, 1986, and was sentenced to confinement for two years, forfeiture of $1,000.00 pay per month for two years, and a reprimand. On his request, Col. Longhofer's sentence was deferred on April 14, 1986, pending the outcome of his appeal. Thereafter, on September 23 of the same year, while he was awaiting appeal of his conviction, however, the deferment was rescinded, and he was ordered to and did begin serving a one-year prison sentence. On September 25, 1986, plaintiff challenged the rescission of the

deferment of his sentence before the Army Court of Military Review (ACMR). Later, on November 25, 1986, the ACMR ordered the release of Col. Longhofer from custody and the deferment of further imposition of his prison sentence pending the outcome of appellate review of his court-martial conviction.

While awaiting the decision on appellate review, Col. Longhofer was selected, in May 1988, for mandatory early retirement by the Army's Separation and Early Retirement Board (SERB). 10 U.S.C. § 638(a) and (d). Thereafter, and on or about June 15, 1988, Col. Longhofer contends that he was informed by Major General Jones of his (Longhofer's) selection for early retirement *effective December 1, 1988.* Major General Jones told him, apparently at that time, that he could retire immediately, but not later than December 1, 1988. Col. Longhofer was not then provided with advice concerning his options, nor was he informed of the legal consequences of immediate retirement.

On June 30, 1988, the ACMR set aside plaintiff's court-martial conviction and sentence, and the charges against Col. Longhofer were dismissed based on a finding that he had been denied the right to a speedy trial.[1] Shortly thereafter, the Judge Advocate General of the Army requested that the United States Court of Military Appeals (CMA) review the foregoing decision of the ACMR. Before the CMA could undertake review of his court-martial, Col. Longhofer initiated a request for retirement, writing the words "under protest" on his retirement form. On August 31, 1988, he was released from active duty in the grade of colonel, and, the following day, he was placed on the retired list.

Shortly thereafter, on September 26, 1989, the CMA affirmed the decision of the ACMR which set aside the court-martial conviction of Col. Longhofer. On March 7, 1991, having been retired since September 1, 1988, *i.e.,* over two and a half years, Col. Longhofer petitioned the Army Board for the Correction of Military Records (ABCMR) for reinstatement to active duty, promotion in rank, and monetary compensation, including back pay. Finding that he was previously properly considered for promotion when eligible and that he voluntarily retired, the ABCMR held that Col. Longhofer was not entitled to reinstatement, nor promotion, merely because of the dismissal of charges against him. Therefore, the board denied his requested relief in that it found no legal error. On September 24, 1992, Col. Longhofer filed the suit in this court.

*Parties' Contentions*

(i) *Defendant*

Defendant, in its motion to dismiss, advances two fundamental theories upon which it seeks to have this case dismissed. First, defendant contends that, because Col. Longhofer *voluntarily* retired *prior to* his mandatory retirement date, this court lacks jurisdiction over the subject matter of his claim. In support of this contention, defendant relies primarily on *Sammt, supra,* which in essence it contends is on all-fours and dispositive of plaintiff's claim for reinstatement, promotion, back pay, and correction of records. Defendant further argues that plaintiff was not under duress, nor was he coerced into requesting an early retirement. Col. Longhofer, avers defendant, had the unbridled option of continuing to serve uninterruptedly in the Army until his mandatory retirement date. Because he retired *sua sponte* prior to that date, plaintiff's decision, argues defendant, can only be considered voluntary, and he must be constrained by the terms of that circumstance. Thus, defendant contends that plaintiff has no entitlement to any promotion, reinstatement, or increased retirement pay. Consequently, it argues that without a monetary entitlement, the Court of Federal Claims lacks jurisdiction over the subject matter of plaintiff's complaint.

Defendant's second contention is that the complaint fails to state a claim upon which

---

**1.** Col. Longhofer's court-martial did not take place within the 120–day speedy trial limitation provision(s). Rule for Courts–Martial (RCM) 707(a).

relief may be granted because Col. Longhofer has never been appointed to the position of general officer. According to defendant, plaintiff was not unlawfully removed from a position in which he would have received increased pay but for the unlawful removal. Because appointment to the position sought by plaintiff requires the exercise of discretion on the part of the executive branch, and because such discretion was never exercised, defendant argues that Col. Longhofer is not entitled to promotion to the rank of general officer, nor to any of the benefits of that position. Therefore, defendant maintains that plaintiff is not entitled to the promotion he seeks, and the Court of Federal Claims lacks equitable jurisdiction to appoint him to that position.

Furthermore, defendant argues that the separation of powers doctrine prevents courts from intruding into military matters. Decisions on promotions within the military, contends defendant, therefore, are properly within the discretion of the military. For the court to grant the requested relief, defendant claims that it (the court) would have to "second-guess the Secretary's decision about how best to allocate military personnel in order to serve the security needs of the Nation" (citing *Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1511 (D.C.Cir.1989)). Because courts are not institutionally competent to make decisions concerning military promotions, defendant claims that this court cannot grant the relief sought by plaintiff.

(ii) *Plaintiff*

Plaintiff, in his opposition to defendant's motion to dismiss, disputes both of defendant's contentions. First, plaintiff contends that his retirement was *involuntary* and that, therefore, the court has jurisdiction to entertain his claim. In fact, in paragraphs 3 and 7 of the complaint, it is averred that plaintiff "was forced to retire on 31 August 1988." In support of this contention, he argues that retirements that are the result of coercion or improper (or

no) advice concerning the consequences of retirement must be considered involuntary.

In short, plaintiff, in essence, argues that he was ordered to retire on any day from and after June 15, 1988, but "no later than December 1, 1988," and that the substance of the foregoing is nothing more than a daily directive to retire. Plaintiff contends that such a directive gave him no choice about *whether* to retire or not. Therefore, plaintiff argues that his early retirement was *not voluntary*. This conclusion, plaintiff contends, is supported by the fact that he wrote the words "under protest" on his request for retirement. Because his initial order was a continuing order to retire no later than December 1, 1988, and he was not advised of his options and their consequences, plaintiff maintains that the facts of this case are distinguishable from those of *Sammt*, relied upon by the defendant. Moreover, plaintiff concludes that the implied continuing daily order to retire is a circumstance that must be regarded as *involuntary*.

Finally, plaintiff contends that he is entitled to be promoted, as well as to receive the additional relief he has requested, because he was denied procedural due process when the Army abused its discretion in denying his application for the correction of his military records. He claims that, under 10 U.S.C. § 875,[2] he is entitled to "all rights, privileges and property" affected by his improper court-martial conviction, which was subsequently set aside. Among these privileges and rights are, allegedly, the right to be reinstated and promoted, as well as the right to the pay appropriate to that status. Plaintiff contends that these rights and privileges to which he was entitled were illegally denied him by the Army. Coupled with the foregoing, he argues that the promotion boards, as well as the ABCMR, were prejudiced by their knowledge of his court-martial conviction when they considered him for promotion and reinstatement. For these reasons, and the fact that the Army abused its discretion in

2. 10 U.S.C. § 875 states that when "a court-martial sentence which has been set aside or disapproved" and a new trial or rehearing is not ordered, "all rights, privileges, and property affected by an executed part of [the] sentence ... shall be restored" to the member.

denying him relief, plaintiff concludes that he is entitled to reinstatement, promotion, and back pay.

## Discussion

### 1. Motion to Dismiss

The obvious purpose of RCFC 12(b) is to promote the expeditious presentation of defenses and objections. *Goad v. United States*, 24 Cl.Ct. 777, 783 (1991). Four defenses are generally available to defendant under this rule.[3] These may be presented to the court prior to the filing of a response to plaintiff's complaint in the form of a motion to dismiss. Defendant, the United States, in its motion to dismiss, relies on two of the defenses enumerated in RCFC 12(b). First, defendant asks the court to dismiss this case for lack of jurisdiction over the subject matter. RCFC 12(b)(1). Alternatively, defendant seeks the dismissal of the complaint for failure to state a claim upon which relief may be granted. RCFC 12(b)(4). On a motion filed pursuant to RCFC 12(b), the court's inquiry is essentially limited to the facts alleged by the plaintiff in the complaint. For example—

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. *The issue is* not whether a plaintiff will ultimately prevail but *whether the claimant is entitled to offer evidence to support the claims.* Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (emphasis added).

---

**3.** RCFC 12(b) provides in pertinent part:
[T]he following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter; (2) lack

### 2. Standard and Nature of Judicial Review

Plaintiff appeals to this court after having been denied relief by the ABCMR. In order for this court to grant relief to the plaintiff, it would have to reject the decision of the board. Thus, the court necessarily serves as a reviewing body to the ACMR when it adjudicates plaintiff's complaint. "The standard of review which the [Court of Federal Claims] applies in reviewing a decision of a military correction board is whether the board's action was arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Tannehill v. United States*, 18 Cl.Ct. 296, 301 (1989). Elaborating on this standard, the Court of Appeals for the Federal Circuit has stated that:

> [R]eview of the administrative decision is limited to determining whether the * * * action was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [the complainant] has been seriously prejudiced.

*Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983), citing *Clayton v. United States*, 225 Ct.Cl. 593, 595, 1980 WL 13179 (1980). This showing by the plaintiff must be made by cogent and clearly convincing evidence. *Rogers v. United States*, 24 Cl.Ct. 676, 682 (1991). The quantum of proof required to show that a board's determination was arbitrary or unsupported by substantial evidence is high because administrators of the military are presumed to discharge their duties "correctly, lawfully, and in good faith." *Id.; Sanders v. United States*, 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979).

Thus, against this background, the court gives great deference to the judgments of military corrections boards because:

of jurisdiction over the person; (3) insufficiency of process; (4) failure to state a claim upon which relief may be granted....

Congress has acted by providing servicemen with an administrative remedy for their wrongs. Once a plaintiff has sought relief from [a] Correction Board, such plaintiff is bound by that board's determination unless he can meet the difficult standard of proof....

*Sanders*, 219 Ct.Cl. at 298, 594 F.2d at 811. Furthermore, the military has the appropriate and unique competence to determine who is fit or unfit to serve in the armed services. "[J]udges are not given the task of running the Army." *Orloff v. Willoughby*, 345 U.S. 83, 93, 73 S.Ct. 534, 539, 97 L.Ed. 842 (1953). Moreover, there are strong policies which compel the courts to allow the armed services great discretion in administering their personnel matters. *Sanders*, 219 Ct.Cl. at 302, 594 F.2d 804. Therefore, on the merits, "we will not substitute our judgment for the board's when reasonable minds could reach differing conclusions." *Id.* As a consequence of such standards, plaintiffs rarely succeed in overcoming these heavy burdens. *See, e.g., Doggett v. United States*, 207 Ct.Cl. 478, 483, 1975 WL 22827 (1975); *Skaradowski v. United States*, 200 Ct.Cl. 488, 471 F.2d 627 (1973); *Hertzog v. United States*, 167 Ct.Cl. 377, 383–84, 1964 WL 8548 (1964).

■ However, before this court may even reach the application of the foregoing standard on the merits in reviewing the decision of a military corrections board, it *must* first be satisfied that it has both subject matter jurisdiction and a justiciable issue before it. In the Court of Federal Claims, jurisdiction is fixed and conferred by the assertion of a legal claim for money damages due from the United States under the Tucker Act, 28 U.S.C. § 1491. Thus, plaintiff must aver an arguably valid entitlement to a monetary award from the United States in order for jurisdiction in the Court of Federal Claims to be proper. Without proper jurisdiction, of course, a court is powerless to entertain a claim for relief.

■ Moreover, even if a court has subject matter jurisdiction, the granting of relief may be "beyond the ken of judicial competence" because the issue presented is nonjusticiable. *Sargisson v. United States*, 913 F.2d 918, 921 (Fed.Cir.1990). *See also, Murphy v. United States*, 993 F.2d 871, 872 (1993).

The distinction between [nonjusticiability and lack of jurisdiction] is significant. In the instance of nonjusticiability, consideration of the cause is not wholly and immediately foreclosed; rather, the Court's inquiry necessarily proceeds to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded.

*Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 699, 7 L.Ed.2d 663 (1962) (quoted in *Sargisson*, 913 F.2d at 921). Furthermore, in the matter here at bar, "[j]usticiability is a particularly apt inquiry when one seeks review of military activities." *Murphy*, 993 F.2d at 872. This is so due to the fact that it is Congress and the executive branch that are given primary responsibility for the military under the Constitution. U.S. Const. art. I, § 8, cl. 12–14, art. II, § 2, cl. 1. As a result, we are admonished and constrained to respect the fact that there are "thousands of ... routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or the jurisdiction of courts to wrestle with." *Voge v. United States*, 844 F.2d 776, 780 (Fed.Cir.1988). Keenly mindful of the foregoing standards, presumptions, and constraints on judicial review, we now turn to consider defendant's motion to dismiss.

### 3. *Subject Matter Jurisdiction*

■ If this court does not have jurisdiction over the subject matter of the complaint, it may not entertain the merits of the claim to determine the propriety of granting relief. Proper jurisdiction is, therefore, an imperative for any consideration of the merits of the case. In this connection, the U.S. Supreme Court in *Gainesville v. Brown–Crummer Invest. Co.*, 277 U.S. 54, 59, 48 S.Ct. 454, 455, 72 L.Ed. 781 (1928), stated that "[j]urisdiction should affirmatively appear, and the ques-

tion may be raised at any time." On this record, the United States contends that this court lacks subject matter jurisdiction because, on the date (August 31, 1988) that plaintiff *sua sponte* caused his retirement to be accelerated, said date substantially preceded his mandatory (involuntary) retirement (December 1, 1988) date. Thus, he is not entitled to any compensation or other benefit beyond what is encompassed in the terms of his voluntary retirement and the applicable statutory and regulatory provisions.

In military pay cases, where a *plaintiff* has voluntarily retired from the service by *sua sponte accelerating* his mandatory retirement date, the Court of Federal Claims lacks subject matter jurisdiction to grant relief as prayed for in subject complaint. *Sammt*. Moreover, even plaintiff has acknowledged that, in these cases, there is a rebuttable presumption that a retirement is voluntary. *Christie v. United States*, 207 Ct.Cl. 333, 518 F.2d 584 (1975); *Heaphy v. United States*, 23 Cl.Ct. 697, 700 (1991). This presumption may be overcome, however, if the plaintiff succeeds in proving that his retirement was the result of duress, coercion, misrepresentation, or mental incompetence. *Id.* at 700–701; *Tannehill*, 18 Cl.Ct. at 300. *See also, Scharf v. Department of the Air Force*, 710 F.2d 1572, 1574–75 (Fed.Cir.1983) (misrepresentation); *Christie, supra* (coercion). However, the mere imminent imposition of an undesirable alternative does not, *ipso facto*, transform a voluntary retirement into an involuntary one. *Sammt*, 780 F.2d at 32. Thus, in *Sammt*, where an officer selected for early retirement in fact retired *prior* to his mandatory retirement date, the Court of Appeals for the Federal Circuit held that his retirement was voluntary even though he would have been *involuntarily* retired at a later date by the Army had he not requested the earlier retirement date.

A determination of whether a resignation was voluntary[4] is to be made by examining the totality of the circumstances surrounding it with specific reference to the availability of a free choice to act by the plaintiff. *Scharf*, 710 F.2d at 1574 (citing *Perlman v. United States*, 203 Ct. Cl. 397, 490 F.2d 928, 933 (1974)). External events and conditions, rather than subjective impressions or perceptions, must guide the court's focused inquiry. *See Taylor v. United States*, 219 Ct.Cl. 86, 93, 591 F.2d 688 (1979); *McGucken v. United States*, 187 Ct.Cl. 284, 289, 407 F.2d 1349 (1969). Involuntariness, therefore, is not determined by the fact that an individual subjectively perceived no choice in deciding to retire earlier when, in fact, he truly had an option. Rather, what is determinative as to voluntariness is whether such individual did in fact have a choice, notwithstanding the undesirability of the alternatives available. Against this background, we now examine the circumstances surrounding Col. Longhofer's request for retirement.

Defendant maintains that Col. Longhofer, like the plaintiff in *Sammt*, voluntarily retired *prior* to his mandatory retirement date. Plaintiff, on the other hand, contends that his retirement was involuntary because he was ordered to retire and because he received inadequate information concerning his options and their consequences. Thus, plaintiff appears to tacitly rely on both coercion and misrepresentation as factors which render his retirement *involuntary* despite his *sua sponte* request for retirement *before* his mandatory date.

It is well established that coercion by government officials or duress can render a retirement involuntary. As previously noted, it is equally well settled that a choice between unpleasant alternatives does not constitute duress.[5]

---

**4.** *Webster's New Collegiate Dictionary* defines "voluntary" as follows: "proceeding from the will or from one's own choice or consent; unconstrained. by interference; self-determining; done by design or intention." *Id.* at 1312 (1977 ed.).

**5.** In this connection, we noted that the court in *Sammt*, 780 F.2d at 32, stated that—". . . the exercise of an option to retire is not rendered involuntary by the imminent imposition of a less desirable alternative."

[T]hree elements are common to all situations where duress has been found to exist. These are: (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party....

*Heaphy*, 23 Cl.Ct. at 701, citing *Fruhauf Southwest Garment Co. v. United States*, 126 Ct.Cl. 51, 62, 111 F.Supp. 945, 951 (1953); *Tannehill*, 18 Cl.Ct. at 301. Applying these guidelines, on the admitted facts at bar, it is patently clear that Col. Longhofer's retirement was not produced by Army coercion inasmuch as he accelerated his retirement date to August 31, 1988, unconstrained by interference, based on his own free will and choice which objectively manifested his individual design and intention. The terms of his chosen September 1, 1988 retirement were not dictated by the Army; rather, plaintiff selected that retirement date on his own initiative without pressure. Additionally, Col. Longhofer clearly had an alternative course of action available to him. He could have continued to serve until he was involuntarily retired by the Army on December 1, 1988. Had he done so, he would be correct in asserting that his retirement was such as of December 1, 1988.

Yet, plaintiff contends that he had no choice as to the August 31, 1988 date, because he was ordered by a superior officer to retire no later than December 1, 1988. This allegation is not factual, but rather it is conclusory and hospitable. According to the plaintiff, Major General Jones told him of his selection for early retirement and informed him that he could request retirement prior to, *but not later than, December 1, 1988*. *Webster's II New Riverside University Dictionary* (1984 ed.) defines "could" as the past tense of "can," which means physical ability, possession of a given power, right, privilege, or capacity. *Id.* at 317, 223. Given this literal definition of said word, we do not find that such an assertion rises to an *order* to retire *prior* to December 1, 1988. Thus, plaintiff's allegation can be deemed to be no more than his subjective interpretation of what was

said to him. Thus, we are constrained to hold that precedent establishes that "[t]he involuntary nature of a resignation arises from external coercion and duress, and not from internal misconceptions...." *McGucken*, 187 Ct.Cl. at 289. Plaintiff may have internally believed that he was coerced, but the facts as alleged do not manifestly demonstrate the external coercion required for a finding of involuntariness. Finally, an otherwise *voluntary* retirement request made "under protest," as Col. Longhofer alleges his was, is not made *involuntary* by the addition of those quoted words to the relevant documents. *See e.g., Tannehill*, 18 Ct.Cl. at 298; *McGucken* 187 Ct.Cl. at 286. Therefore, we are constrained to conclude that obligatory precedent compels us to hold that Col. Longhofer's retirement was not the result of coercion or duress brought about by the Army, but was clearly voluntary.

While a retirement may be rendered involuntary if it is the result of misrepresentation by government officials, this record contains no such evidence. For example, in *Scharf*, 710 F.2d 1572, the Court of Appeals for the Federal Circuit found the plaintiff's optional retirement to be involuntary because he had reasonably relied on objectively misleading statements made by an official government retirement counselor. Specifically, the plaintiff was told, in response to his inquiry, that his optional retirement would be set aside if he was approved for disability retirement and that he could use his accumulated sick leave prior to retirement. This statement was false. Because the court concluded that plaintiff had reasonably relied on a material misstatement, it held his retirement to be involuntary. However, in an earlier case, the predecessor Court of Claims had declined to hold a retirement involuntary based on misrepresentation. *Taylor*, 219 Ct.Cl. 86, 591 F.2d 688. There, the court found that the plaintiff had made no inquiry, nor had he been given any misinformation. "His mistaken, subjective perception of his rights did not render his retirement involuntary, because the test" was one of objective misrepresentation "rather than

the internal, subjective perception of the employee." *Id.* at 93, 591 F.2d 688. Thus, the cases make clear that what is required for a retirement to be considered involuntary is reasonable, detrimental reliance on the part of the plaintiff on a material misstatement made by a government official. *Heaphy*, 23 Cl.Ct. at 700. Furthermore, "[p]laintiff[s] cannot be granted relief simply because [they] fail[ ] to more fully educate [themselves] as to the law, and later wish[ ] to revisit [their] voluntary choice[s]. It is well-established that ignorance of the law is no excuse." *Id.* at 703.

In the case at bar, plaintiff alleges no material misstatement, nor is there a scintilla of evidence supporting such a conclusion. Col. Longhofer does not claim to have been given false information concerning his decision to retire. Rather, he simply claims that he was never advised of his options and the legal consequences of his decision. Moreover, he alleges no effort to obtain such information. Col. Longhofer was told by Major General Jones that he had been selected for mandatory early retirement. This was a true statement. He was further told that he could choose to retire immediately, but no later than December 1, 1988. This too was accurate. Col. Longhofer was not told that if he chose to retire early he would not be entitled to sue for correction of his military records in the Claims Court (Court of Federal Claims), but neither did he make any inquiry concerning his choice. All of the information that he was given was accurate. Any subjective misperception on the part of the plaintiff is insufficient and does not rise to the level of actionable misrepresentation.[6] Thus, since no reasonable person would have been misled by the statements made, in the absence of any misinformation, plaintiff's retirement may not be considered involuntary on the basis of misrepresentation. *See e.g., Taylor*, 219 Ct.Cl. at 92–93, 591 F.2d 688.

On this record, plaintiff has even failed to allege facts (as opposed to mere conclu-

sions) which, when construed in the light most favorable to him, succeed in rebutting the presumption that his retirement was voluntary. No facts have been proffered which would allow the court, upon premising thereon, to draw the legal conclusion that Col. Longhofer's decision to retire was the result of coercion, duress, or misrepresentation by the Army. Therefore, we are compelled to conclude, given existing precedent, that plaintiff, *sua sponte*, voluntarily retired from the Army on August 31, 1988, effective September 1, 1988. Since one who voluntarily retires has no entitlement to reinstatement, promotion, or back pay, we hold that this court lacks subject matter jurisdiction over Col. Longhofer's claim. Without jurisdiction, we must dismiss this case.

Having found that this court lacks jurisdiction over the subject matter of the complaint, the analysis need proceed no further. However, for the sake of completeness, we now turn to the second argument advanced by the defendant's motion to dismiss.

### 4. *Justiciability*

█ Defendant's second argument is that the complaint should be dismissed for failure to state a claim upon which relief may be granted. Specifically, the United States contends that Col. Longhofer has no entitlement to reinstatement or promotion because such action requires the exercise of discretion on the part of the military, as well as the executive branch and Congress. In this connection, defendant appears to argue that even "the existence of jurisdiction does not confirm the court's ability to supply relief." *Murphy*, 993 F.2d at 872. Thus, contends defendant, plaintiff requests relief that the court is incompetent to fashion. Plaintiff, in opposition, contends that he does have a legal entitlement to the relief that he seeks because he was denied due process of law and because the Army abused its discretion in denying him relief.

---

**6.** In footnote 1 to plaintiff's Opposition To Defendant's Motion To Dismiss, we observe that it is averred that Col. Longhofer is a highly intelli-

gent person by the reference that—"he was in the top 1% of the Army's Colonels before his Court Martial...."

In order to withstand a motion to dismiss for failure to state a claim filed pursuant to RCFC 12(b)(4), a plaintiff must have alleged facts, which if proven, would entitle him to relief as a matter of law. Implicit in this standard is the requirement that the court have the capability and competence to grant the requested relief. In other words, a plaintiff must place a justiciable issue before the court. "A controversy is 'justiciable' only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'" *Voge*, 844 F.2d at 780 (quoting *Greene v. McElroy*, 254 F.2d 944, 953 (D.C.Cir.1958)). These "tests and standards" which can be "soundly administered" by courts are those of the common law, those contained in statutory law, and, to a lesser extent, those found in regulation. In the absence of judicially manageable standards, the courts must defer to those in whom responsibility for making a particular determination is duly vested, by the Constitution or by an enactment of Congress.

Therefore, in the military context, deference to the professional judgments of those entrusted with the task of protecting the nation must be "at its apogee." *Rostker v. Goldberg*, 453 U.S. 57, 70, 101 S.Ct. 2646, 2654, 69 L.Ed.2d 478 (1981). As stated in *Gilligan v. Morgan*, 413 U.S. 1, 10, 93 S.Ct. 2440, 2446, 37 L.Ed.2d 407 (1973) (emphasis in original)—

> [I]t is difficult to conceive of an area of governmental activity in which the courts have less competence. The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject *always* [of course] to civilian control of the Legislative and Executive Branches. The ultimate responsibility for these decisions is appropriately vested in branches of the government which are periodically subject to electoral accountability. It is this power of oversight and control of military force by elected representatives and officials which underlies our entire constitutional system....

As noted in *Murphy*, 993 F.2d at 873, "judicial review is only appropriate where the Secretary's discretion is limited, and Congress has established 'tests and standards' against which the court can measure [its] conduct." *See also Sargisson*, 913 F.2d at 922. "The court is not called upon to exercise any discretion reserved for the military, it merely determines whether the procedures were followed by applying the facts to the statutory or regulatory standard." *Murphy*, 993 F.2d at 873.

Defendant argues that the court may not grant the relief prayed for in plaintiff's complaint because he has no entitlement to such relief in the absence of the exercise of military and executive discretion. Plaintiff contends that he does have an entitlement to promotion and back pay based on 10 U.S.C. § 875. This section provides that, when a court-martial sentence is set aside, a service member is entitled to the restoration of "all rights, privileges and property affected by an executed part of [the] sentence...." 10 U.S.C. § 875. According to plaintiff, this section entitles him to the promotions he would have received while his court-martial was on appeal and to the appropriate back pay. This contention is simply not true. A promotion is not a right, privilege, or property. "[O]ne is not entitled to the benefit of a position until he has been duly appointed to it." *United States v. Testan*, 424 U.S. 392, 402, 96 S.Ct. 948, 955, 47 L.Ed.2d 114 (1976). *See also United States v. McLean*, 95 U.S. 750, 5 Otto 750, 24 L.Ed. 579 (1878). Promotions within the military are discretionary, and this court lacks the competence to ascertain what promotions Col. Longhofer "would have received" but for his court-martial sentence. There is no test or standard which the court could use to evaluate Col. Longhofer's capabilities as compared to the other candidates who were vying for promotions at the same time that Col. Longhofer was considered or should have been considered. Thus, with regards to plaintiff's request for promotion, there is no justiciable controversy for this court to adjudicate.

Similarly, this court is not competent to determine whether Col. Longhofer should have been selected for mandatory early retirement. Determinations concerning who is fit and who is unfit to serve in the military are within the discretion of the military.

At bar, Col. Longhofer was in fact recommended for early retirement pursuant to 10 U.S.C. § 638 (1980), which provides in relevant parts as follows:

(a) A regular officer on the active-duty list of the Army ...—

(2) who holds the regular grade of colonel ... has served at least four years of active duty in that grade and whose name is not on a list of officers recommended for promotion[,]

\* \* \* \* \* \*

may be considered for early retirement by a selection board convened under section 611(b) of this title. The Secretary of the military department concerned shall specify the number of officers described in clauses ... and (2) which such a board may recommend for early retirement....

\* \* \* \* \* \*

(d) The retirement of an officer pursuant to this section shall be considered to be an involuntary retirement for purposes of any other provision of law.

In an analogous situation in *Murphy*, 993 F.2d at 873, the court there stated that:

[t]he court must first assess the justiciability of the separation by determining what limits were placed on the Secretary's discretion to release a[n] ... officer from active duty....

Finding no discernible limits to his discretion, that court went on to say that this court could not review the board's decision because the Secretary's compliance "is beyond the ken of judicial competence; it is nonjusticiable." *Id.* (citing to *Sargisson*, 913 F.2d at 921).

On this record, therefore, there are no tests or standards which this court could use to make such a determination with respect to Col. Longhofer. Since this court has no basis upon which to declare that plaintiff should not have been selected for mandatory early retirement, it has no basis to order that he should be reinstated. Thus, Col. Longhofer's request for reinstatement is likewise non-justiciable.

Finally, plaintiff claims that the Army abused its discretion when it considered him for promotion and retirement. He alleges that the various boards, which considered his records, were prejudiced by the information concerning his court-martial order contained therein. He claims this information was false and misleading. But, it has been held that—

... the possibility of erroneous records does not transform an otherwise nonjusticiable action into a reviewable one. After the [Court of Federal Claims] reviewed and purported to correct the records, any additional corrective action it devised [would be] the result of nothing more than speculation that the [Army's] decision would have been different. "A court lacks the special expertise needed to review ... officers' records and rank them on the basis of relative merit."

*Murphy*, 993 F.2d at 873 (quoting *Sargisson*, 913 F.2d at 922). Moreover, this court cannot order the Army to reconsider Col. Longhofer for promotion or reinstatement because to do so would be to fashion the type of equitable relief which the Court of Federal Claims may not grant. Because the merits of the Army's decision are "beyond judicial reach, so too is consideration of his military records [given the absence of pure legal error]." *Id.* at 874.

Since this court may not grant the relief requested by plaintiff in his complaint, then there is no claim upon which relief may be granted. Thus, we conclude that the complaint fails to state a claim upon which relief may be granted. Pursuant to Rule 12(b)(4), the complaint should be dismissed.

*Conclusion*

Because Col. Longhofer voluntarily retired from the Army, this court lacks subject matter jurisdiction to entertain his complaint. Furthermore, plaintiff fails to state a claim upon which relief may be granted because the complaint is non-justi-

ciable. For all of the foregoing reasons, defendant's motion to dismiss is hereby GRANTED, and plaintiff's complaint is dismissed. The Clerk shall enter judgment accordingly. No costs.

IT IS SO ORDERED.