**Stephen F. MOYER, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 97–287C.**

United States Court of Federal Claims.

July 9, 1998.

William S. Aramony, Alexandria, VA, with whom was Norton C. Joerg, Marlboro, MD, for plaintiff.

Pamela A. Roth and F. Jefferson Hughes, U.S. Department of Justice, Washington, DC, with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen, and Assistant Director James M. Kinsella, U.S. Department of Justice, Washington, DC, and Lt. Col. Terry L. Elling and Capt. Joanne P. Tetreault, U.S. Army Litigation Services Agency, Arlington, VA, for defendant.

## OPINION

BRUGGINK, Judge.

Plaintiff Stephen Moyer challenges a denial by the Army Board for Correction of Military Records (ABCMR) of his application to correct his military records to show that he was discharged due to physical disability, rather than as a result of his resignation for the good of the service. Pending are the government's motion to dismiss or, in the alternative, for summary judgment based on the administrative record, and plaintiff's cross-motion for summary judgment. The motions have been fully briefed and supplemented with additional filings at the court's request; oral argument is deemed unnecessary. For the reasons stated below, the government's motion to dismiss is granted.

## BACKGROUND

On February 13, 1991, while serving as a captain in the United States Army, Stephen Moyer was charged with violating Army regulations pertaining to handling classified information and with adultery. An additional charge of conduct unbecoming an officer was subsequently filed on March 14, 1991. The

charges were referred for trial by general court-martial on March 22, 1991.

After consulting with his assigned military defense counsel, Captain Richard Jaynes, Moyer elected to resign for the good of the service. He tendered his letter of resignation on March 25, 1991. His resignation was approved as an "other than honorable conditions" discharge by the Deputy Assistant Secretary of the Army (DASA) on April 23, 1991. Moyer was notified of this fact on May 21, 1991, and scheduled to be separated no later than June 4, 1991, and actually separated on June 6, 1991.

If the matter rested there, Moyer would have no grounds for asserting a money claim against the United States. By having voluntarily given up a statutory right to pay, no basis would be present on which to grant a judgment. The matter does not end there, however, because Moyer asserts that he did not voluntarily resign.

At some point after the criminal investigation commenced but before his separation from the Army, Moyer also decided to pursue a discharge based on physical disability. Precisely when this occurred is disputed. According to Moyer, it was before he tendered his resignation: "my medical condition had been undergoing review since December of 1990, with the possibility that I might be referred to a Medical Evaluation Board (MEB)." (Moyer Aff. ¶ 4.) He also states that he discussed "the relationship between my then-pending processing for medical disability and any discharge processing that would be initiated pursuant to [a resignation letter]" with his attorney, Captain Jaynes, before submitting his resignation. (Id. ¶ 3.) He claims that Captain Jaynes advised him that,

> under applicable Army regulations then in effect, any discharge processing that would occur as the result of any offer I might make to accept discharge in lieu of court-martial would take place simultaneously with the medical processing and that, if I were found unfit for duty, that fact would become a part of the discharge package sent up the chain of command.

(Id. ¶ 5.) In addition, Moyer states that his immediate supervisor, Captain David Oten,

advised him that "any request that I might make for discharge in lieu of trial would be held locally ... pending the outcome of my medical processing. He advised that, once the medical processing was complete, the result would be added to the package including my request and forwarded up the chain of command for a decision." (Id. ¶ 6.) Finally, Moyer claims that "[b]ased on this information, coupled with my discussions with counsel ... I decided to submit my request, thinking that both the request and the result of my disability processing would be considered by the Secretary of the Army in arriving at a final disposition of my case." (Id. ¶ 7.) Moyer does not state that he was promised a discharge based on physical disability, but only that he was promised simultaneous consideration of his resignation request along with the results of the request for a medical discharge.

Correspondence from Captain Jaynes, however, indicates he was not told by Moyer about a request for a medical discharge until May 7, 1991, after Moyer had resigned. Captain Oten denies that he was Moyer's immediate superior and states that he was not personally involved in Moyer's case and has no recollection of ever advising him about anything. In addition, Captain Oten "cannot imagine" that he would have advised Moyer on a legal or medical discharge matter but states that he would have referred Moyer to the JAG office or to medical personnel with expertise in separations. Other documents in the record also show that the MEB process did not begin until after Moyer had submitted his resignation. On April 17, 1991, the U.S. Army Medical Department Activity issued a memorandum stating that Moyer was going before a MEB. The MEB concluded, on May 10, 1991, that Moyer was not fit for service due to his ankle injury and recommended that he be referred to the Physical Evaluation Board (PEB) to determine whether he should be retained in the service.

On May 24, 1991, after his resignation, Moyer asked the Army to "defer further action to separate me from the service ... until the Office of the Secretary of the Army considers information regarding my physical

disability." He also asked that his separation occur on the basis of a physical disability in the event that the Physical Evaluation Board (PEB) concluded he was physically unfit for duty. In addition, Darnall Army Hospital requested that Moyer be retained past his original separation date so that his disability processing could be continued. Moyer's chain of command approved the request and extended his estimated separation date to December 3, 1991. This extension, however, was overruled by DASA who directed that Moyer be separated on June 4, as originally scheduled. He was ultimately discharged on other than honorable conditions on June 6, 1991.

## PROCEDURAL HISTORY

Moyer appealed his discharge to both the Army Discharge Review Board (ADRB) and the ABCMR. In his appeal to the ADRB, Moyer asserted (1) that the undesirable discharge was inequitable when considered in the context of his long period of honorable service, (2) that his resignation for the good of the service was "not legally justified" because his disability evaluation did not proceed simultaneously with his resignation, and (3) that other mitigating circumstances needed to be considered. The ADRB eventually concluded on December 31, 1996, that Moyer's discharge was proper but inequitable as to its characterization, and accordingly upgraded his discharge to a general discharge, under honorable conditions. The ADRB decision is not challenged here.

Moyer appealed his discharge to the ABCMR on August 17, 1991. Although he initially proceeded *pro se*, he subsequently retained counsel. The asserted errors being reviewed were "Unjust Charges (discrimination)," "Improper Article 32 Hearing," "Invalid Resignation for the Good of the Service," and "Wrongful Termination." He sought to have his records corrected to show that he was discharged by reason of physical disability, or in the alternative, that he was placed on the Temporary Disability Retired List (TDRL), as well as monies due as a result of these corrections. The ABCMR denied his application for relief on March 15, 1995, and denied his request for reconsideration on March 20, 1996. Neither before the ADRB nor the ABCMR did Moyer allege that his resignation was involuntary.

Plaintiff filed the present lawsuit on April 18, 1997. He alleges five counts of wrongdoing. In Count I, Moyer asserts that the Army failed to follow 10 U.S.C. § 1201 and its own regulations when it discharged plaintiff before his disability processing was complete;[1] in Count II, he alleges that the Army violated its regulations by discharging him *in absentia*, without notice, without a separation physical, and while he was in possession of orders extending his service until December 3, 1991; in Count III, he claims that the Army violated its own regulations by failing to evaluate plaintiff psychiatrically before permitting him to resign;[2] in Count IV, he alleges that the ABCMR acted arbitrarily and capriciously in considering Counts I–III above; and in Count V, he alleges that he was deprived of his rights with respect to Counts I–IV above without due process of law. As relief Moyer asks this court to (1) correct his records to show that he was permanently retired on June 6, 1991, by reason of physical disability, or in the alternative, that he was placed on the TDRL on June 6, 1991, (2) pay him all back pay and allowances due him, including retirement or severance pay, and (3) grant other appropriate relief.

---

1. Moyer alleges that Army Regulation 635–40 prohibits a serviceman from being administratively separated until the medical review process is complete. Plaintiff was not "administratively" separated, however, because he was charged with an offense under the Uniform Code of Military Justice. Indeed, Army Regulation 635–40 expressly provides: "a soldier charged with an offense under the UCMJ ... may not be referred for, or continue disability processing unless—[no exception is applicable]."

2. The ABCMR concluded that no reasonable grounds existed to believe that plaintiff "at the time he submitted his resignation was mentally defective, deranged, or abnormal or otherwise not mentally responsible for his actions." Plaintiff does not argue here that any mental incompetence vitiates his consent to discharge, and he certainly has not shown such incompetence.

## DISCUSSION

■ It is well settled that this court lacks jurisdiction over the claims of a soldier who has voluntarily resigned from the service. *See Sammt v. United States,* 780 F.2d 31, 32–33 (Fed.Cir.1985); *Bruton v. United States,* 34 Fed.Cl. 347, 352 (1995). Plaintiff's letter of resignation states on its face that it is voluntary and the result of a deliberate choice to avert court-martial proceedings:

> I, Stephen F. Moyer, Captain ... voluntarily tender my resignation from the Army for the good of the service ... I do not desire to appear before a court-martial or board of officers. I have not been subject to coercion with respect to this resignation and have been advised of and fully understand the implications of this action.

Defendant accordingly urges dismissal on this basis.

For the first time, in his response to the government's motion, plaintiff argues that his resignation was not "voluntary," despite its plain language, because he was misled into thinking that his resignation would be held in abeyance until his disability processing was complete. Specifically, plaintiff asserts that the Army, acting through Captains Jaynes and Oten, misled him into believing that "his discharge package would go forward through the chain of command in tandem with the disability process, so that the Secretary would have the option of allowing him to retire with disability pay." Plaintiff supports his opposition with documentary evidence and an affidavit, discussed above. Defendant replies that plaintiff was not misled, and that, in any event, he waived his misrepresentation claim by failing to raise it before the ABCMR.

■ Plaintiff is correct that where the government supplies deceptive information in connection with a resignation, and the individual resigns in reasonable reliance on that misinformation, then the resignation is con-

sidered involuntary. *See Scharf v. Department of the Air Force,* 710 F.2d 1572, 1575 (Fed.Cir.1983). Plaintiff did not make this contention at the ABCMR, however, thereby waiving that claim.

Although resort to the ABCMR is an optional procedure, having elected to go that route, Moyer was obligated to raise before the ABCMR any known objections to his resignation that he wished to preserve for judicial review in this court. *See Doyle v. United States,* 220 Ct.Cl. 285, 312, 599 F.2d 984, 1000 (1979). Plaintiff asserts in his surreply brief that he did, in fact, raise the issue of misrepresentation before the ABCMR and attaches a portion of the briefing submitted by his attorneys to that agency. The attached brief, however, is silent regarding misrepresentations or the involuntariness of plaintiff's resignation; instead, it argues that plaintiff's commanding officers and the Army violated regulations by not simultaneously proceeding with a disability-based separation.[3] The court concludes that Moyer did not argue before the ABCMR that the Army induced him to submit a resignation for the good of the service by falsely promising concurrent disability processing.

By its very nature, an argument that plaintiff's resignation was involuntary due to reliance on a promise that the Army would simultaneously consider a medical disability retirement is known at the time of discharge. Moyer should have been well aware of the alleged government deception at the time he applied to the ABCMR for relief, in the first instance while proceeding *pro se,* but certainly after having obtained counsel. Because Moyer did not raise a misrepresentation claim before the ABCMR, it is now waived. *See Haynes v. United States,* 190 Ct.Cl. 9, 12, 418 F.2d 1380 (1969); *Tannehill v. United States,* 18 Cl.Ct. 296, 302 (1989); *Burns v. United States,* 9 Cl.Ct. 273, 278–79 (1985).

Insistence on this rule would not, in the court's view, be unjust. *Cf. Bio–Medical Applications of Lewiston, Inc. v. United States,*

---

3. Although Moyer addressed the same general theme before the ABCMR that he raises here— simultaneous processing of a disability discharge with his resignation—the argument made before the ABCMR is different than his current claim. There, Moyer argued that the Army misapplied its own regulations, a legal argument solely involving interpretation of the Army's regulations and unrelated to whether he was promised anything; here he argues that his consent was vitiated by virtue of misrepresentations. The two arguments are entirely distinct.

17 Cl.Ct. 84, 89 (1989). First, the court notes that the injury to Moyer's foot—the primary basis for his disability claim—occurred nearly a decade before he was charged. The first record of any reference to an MEB appears in January 1991, one month after the court-martial investigation began. Moreover, the advice Moyer says he was given appears to have been in conflict with AR 635–40. For some reason, his disability processing did proceed, however. The DASA in fact, therefore, had before her the substance of Moyer's claim for disability retirement. Presumably, it was considered. In addition, if Jaynes and Oten had not allegedly confused Moyer with improper advice, Moyer would have been in the identical position he found himself before—facing a choice of court-martial proceedings or resignation.

 Finally, even if Moyer did not waive his misrepresentation claim, this court finds [4] it to be without merit. Any analysis of a serviceman's resignation begins with the presumption that it was voluntary. *See McIntyre v. United States,* 30 Fed.Cl. 207, 211 (1993). That presumption has not been rebutted here. The only evidence, apart from his affidavit, that arguably supports Moyer's position is medical records from consultations in December 1990 and January 1991. Moyer argues that these medical records show he was under consideration for a disability-based separation at the time he resigned. He highlights the fact that one record contains the notation "med board." These records, however, merely indicate that Moyer had been examined in connection with shoulder, arm, and ankle complaints and that an MEB was contemplated.[5] They do no more than that. When considered in light of other evidence, discussed below, these rec-ords and the stray reference to a "med board" are without significance.

All contemporaneous documents and other evidence show that Moyer did not pursue a disability separation until after he tendered his resignation, which renders implausible his assertion that he decided to resign based on advice that both his disability processing and resignation would be considered by the Secretary of the Army. According to Army records, the MEB was initiated approximately on April 17, 1991, after Moyer had tendered his resignation. The MEB did not reach a conclusion or recommend referring Moyer to the PEB until May 10, 1991.

The timing of these records is consistent with Captain Jaynes's recollection of events, set forth in a statement to the ABCMR. In this statement, Captain Jaynes, who defended Moyer against the criminal charges, states that Moyer informed him on May 7, 1991, after Moyer had submitted his resignation, that he (Moyer) was "being medically evaluated for possible separation for physical disability ... and his status was going to be considered by a Medical Evaluation Board...." This chronology is also confirmed by Moyer himself, who stated on May 24, 1991, that

> [a] visit to Brooks Army Medical Center (BAMC) in April 1991 indicated additional surgical interventions would not improve my condition and indicated I was unfit for duty. Consequently, a Medical Evaluation Board has been initiated.... I understand that the Board's results will be completed soon and will be forwarded to BAMC for evaluation by a Physical Evaluation Board (PEB).
>
> . . . .

---

4. The government, in its motion to dismiss for lack of jurisdiction, disputes facts alleged by plaintiff that affect the court's jurisdiction. In this context, the court can make threshold factual findings necessary to ascertain the presence of jurisdiction. *See Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988); *Al Johnson Constr. Co. v. United States,* 19 Cl.Ct. 732, 733 (1990). While there is a conflict between Moyer's affidavit and the statements of Jaynes and Oten, the court is persuaded that the dispute is not genuine. Plaintiff's current statement is not only at odds with the other statements and documentary evidence, but is contra-dicted, in essence, by his own statement of May 24, 1991, as explained below.

5. Plaintiff asserted that the documents attached to his letter of resignation support an inference that resignation was conditioned on simultaneous processing of a disability discharge. Because plaintiff alleged that the administrative record omitted certain attachments to that letter, which plaintiff claimed to have, he was given the opportunity to supplement the record. The court has taken into account that new submission.

In the event the PEB concludes that I have a physical disability rendering me unfit for further duty, I am requesting that separation occur on the basis of that medical condition.

This plainly suggests that the MEB was initiated after the April examination, and therefore, after Moyer's resignation. Based on Moyer's letter of resignation, the Army stayed court-martial proceedings against him, and ultimately dropped the charges after his resignation was accepted by DASA. Despite Moyer's current focus on his allegedly ongoing disability discharge process, there is no mention of any disability-related concerns in his letter of resignation. And the other documents, including Moyer's own letter, all suggest that Moyer did not pursue a disability discharge until the period after resignation and before discharge. In fact, in his May 24 letter, Moyer asked the Army to "defer further action to separate me from the service ... until the Office of the Secretary of the Army considers information regarding my physical disability." That request should have been a reminder if, in his earlier resignation, he had acted on any solid misrepresentations to that same effect.

These facts, coupled with the late assertion of this argument, discredit the assertion that Moyer was promised simultaneous disability processing. In sum, the court finds that Moyer did not pursue a disability discharge until after he had submitted his resignation, and that the Army did not mislead him in connection with his decision to resign, which was done to avoid criminal prosecution. Accordingly, Moyer's resignation was voluntary and the court is without subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the United States' motion to dismiss is granted. The clerk is directed to dismiss the complaint. No costs.

