Anthony M. GALLUCCI, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 96–614C.

United States Court of Federal Claims.

Aug. 18, 1998.

John A. Wickham, Evergreen, Colorado, for plaintiff.

Steven J. Abelson, Washington, D.C., with whom was Assistant Attorney General Frank W. Hunger, for defendant. Lt. Col. D.J. Thornley, USMC, Department of the Navy, of counsel.

## OPINION

MEROW, Judge.

This case is before the court on defendant's motion to dismiss the complaint pursuant to Rules 12(b)(1) and (4) of the Rules of the Court of Federal Claims ("RCFC") for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. After Non Judicial Punishment ("NJP") was imposed upon plaintiff, his superiors advised him to elect voluntary resignation under the Voluntary Separation Incentive ("VSI") program rather than face the consequences of an anticipated recommendation for administrative discharge. Plaintiff unwillingly followed this advice and resigned from the Marine Corps with an honorable discharge in September 1994. Contending that he was forced to involuntarily resign his commission, plaintiff petitioned the Board for Correction of Naval Records ("BCNR") for reinstatement as a regular commissioned officer in the United States Marine Corps with concomitant back pay, allowances, and credit for pay, promotion and retirement. The BCNR determined Capt. Gallucci's resignation was voluntary and declined to reinstate plaintiff's commission.

In this action plaintiff challenges the actions of the military and the findings of the BCNR as arbitrary and capricious. In addition, for the first time, plaintiff seeks to appeal and set aside the NJP levied against him in April 1994. Furthermore, plaintiff requests an order directing the Marine Corps to delete the following items from Capt. Gallucci's military records: (1) all references to the NJP; and (2) any adverse duty performances or documents resulting therefrom.

For the reasons stated below, it is concluded that plaintiff's complaint must be dismissed pursuant to RCFC 12(b)(1) because plaintiff voluntarily resigned from the Marine Corps. Furthermore, plaintiff's request for an order directing that plaintiff's NJP be set aside is not justiciable in this court and must be dismissed pursuant to RCFC 12(b)(4). Although plaintiff was not required to do so, having elected to seek relief from the administrative review board, plaintiff must also raise the issue of correction of his military records in that forum. The BCNR confirmed the Commandant of the Marine Corps' ("CMC") determination that plaintiff's resignation was voluntary. This determination was well supported, and was neither arbitrary nor capricious, not an abuse of discretion and not contrary to law and regulation. The court does not reach the question of whether summary judgment is appropriate.

## BACKGROUND

### *Facts*

Plaintiff is a former Captain in the United States Marine Corps and a highly trained infantryman with a distinguished service record. He last served as Commanding Officer, Headquarters and Service Company, Third Medical Battalion, Third Force Service Support Group, Fleet Marine Force, Pacific on the island of Okinawa, Japan.[1] It is undisputed that on April 11, 1994, while conducting a closed door meeting in his office to hear the grievances of another Marine, referred to as "Request Mast," Captain ("Capt.") Gallucci assaulted the enlisted man. Conceding that his actions were wrong, Capt. Gallucci placed himself on report to his superiors and on April 12, 1994, was relieved of his duties as Commanding Officer as a result of the assault incident.

Pursuant to Article 15 of the Code of Military Justice,[2] on April 25, 1994, a hearing

---

1. The facts of this case are derived from plaintiff's complaint, the parties' briefs, the supplemental statements of fact submitted by each party and the Administrative Record unless otherwise indicated.

2. Article 15 of the Code of Military Justice is codified at 10 U.S.C. § 815. Under this provi-

was held in lieu of court martial. Brigadier General ("Brig.Gen.") Carol Mutter presided over the NJP hearing and solicited written statements and oral testimony regarding plaintiff's character and leadership abilities from both the Commanding Officer of the Third Medical Battalion and from several non-commissioned officers under Capt. Gallucci's command. The victim did not testify at the NJP hearing, but his written statement was submitted for consideration.

Brig. Gen. Mutter imposed punishment of (1) a fine of $1,000.00 and (2) the entry of a punitive Letter of Admonishment ("LOA") in plaintiff's personnel file. Pl.Compl. ¶ 12; Admin.R. at 64. At the close of the NJP hearing, Brig. Gen. Mutter announced her intention to also recommend that Capt. Gallucci be administratively separated from the Marine Corps unless he elected to voluntarily resign from the Marine Corps pursuant to the Voluntary Severance Incentive ("VSI") program.[3] In furtherance of Brig. Gen. Mutter's effort to complete handling of the case before May 14, 1994,[4] Capt. Gallucci was directed to advise the Brigadier General, on or before May 12, 1994, whether he would submit a VSI application and voluntarily resign. Plaintiff was not offered the option of remaining in the active Marine Corps without facing a recommendation for administrative separation. If plaintiff were to be so recommended and administrative separation proceedings commenced, he would no longer be eligible to apply for the benefits of the VSI program. Admin.R. at 112. Faced with the choice between voluntary resignation and the uncertain consequences of Brig. Gen. Mutter's recommendation for administrative separation, plaintiff asserts that he "was on the horns of a dilemma." Pl. Opp'n at 6. Capt. Gallucci did not want to separate from

the military and end his Marine Corps career under either circumstance. Pl. Opp'n at 6.

Immediately following the hearing, plaintiff and his wife met with Lieutenant ("Lt.") D.B. Mercier, the Brig. Gen.'s Staff Judicial Advocate ("SJA"), to discuss Capt. Gallucci's options in the aftermath of the NJP hearing. Lt. Mercier explained the procedure for appealing the NJP [5] as well as the process by which the LOA would be prepared and issued. Admin.R. at 121–23. Capt. Gallucci signed a statement acknowledging that his appellate rights had been explained to him. Admin.R. at 229. With regard to the Brigadier General's announcement that she intended to recommend administrative separation, Lt. Mercier recommended that plaintiff avail himself of the VSI program benefits and elect voluntary resignation. Pl.Compl. at ¶ 15; Admin.R. at 121–23.

Plaintiff elected not to appeal the NJP. Pl.Compl. at ¶ 21. On April 29, 1994 the LOA detailing the assault and the resulting NJP was signed by Brig. Gen. Mutter. Admin.R. at 107–08. The LOA also contained specific direction to plaintiff on the appellate process. Admin.R. at 107–08. Capt. Gallucci submitted a rebuttal to the LOA in which he asserted that the punishment levied against him was overly harsh in light of collateral facts which he alleged were not addressed in the LOA and not raised at the NJP hearing. Admin.R. at 64–66.

On May 12, 1994, Brig. Gen. Mutter sent her Chief of Staff, Colonel ("Col.") Michael P. Boak to find out whether Capt. Gallucci had elected to voluntarily resign pursuant to VSI. Upon locating plaintiff at field exercises, Col. Boak expressed his opinion that it was unlikely that Capt. Gallucci would pass an administrative separation board proceeding on Okinawa if Brig. Gen. Mutter submitted a

---

sion a member of the armed forces may elect non-judicial punishment issued by a commanding officer in lieu of being subjected to court martial.

3. The Voluntary Separation Incentive ("VSI") program was enacted by Congress to provide a financial incentive to certain members of the armed forces for voluntary appointment, enlistment or transfer from the current assignment to a reserve component, consistent with the needs of the armed forces. 10 U.S.C. § 1175.

4. Brig. Gen. Mutter was aware at the time of Capt. Gallucci's NJP hearing that she was scheduled to change command and transfer elsewhere, effective May 13, 1994.

5. Although no time period was set for an appeal, the Marine Corps directive states that plaintiff must appeal within a reasonable time after the imposition of NJP and suggest that 5 days is considered a reasonable time. Admin.R. at 229.

recommendation for administrative separation. Pl.Compl. at ¶ 22; Admin.R. at 53. Later that day, plaintiff informed Col. Boak that he would resign under the VSI program in order to avoid the Brig. Gen.'s recommendation for administrative discharge. Pl. Compl. at ¶ 22; Admin.R. at 152. Brig. Gen. Mutter filed a report dated May 12, 1994, in which she stated that "based upon plaintiff's decision to voluntarily resign from the Marine Corps, she would not recommend administrative discharge proceedings." Admin.R. at 220–221.

Brig. Gen. Mutter was assigned to a new command on May 13, 1994 and left the island of Okinawa on May 15, 1994. On May 18, 1994, plaintiff submitted an application to the VSI program. In conjunction with this application plaintiff submitted a signed statement which specifically maintained:

> "I [Capt. Anthony M. Gallucci] am aware of the program benefits and am making this decision to leave the Marine Corps voluntarily based on no promises or information other than the program benefits as approved this date."

Admin.R. at 39; Def.Mot. at 6. Additionally, plaintiff concedes that this statement reflected that he was counseled and was aware of Marine Corps procedure regarding the VSI program. Pl. Opp'n at 10. Capt. Gallucci acknowledges that he was also aware of the directive which stated in relevant part:

> "[O]fficers are reminded that the decision to apply for VSI ... is a final and irrevocable decision to leave the active component of the Marine Corps. Requests to withdraw applications will not normally be approved."

Pl.Opp'n at 10; Admin.R. at 24.

Nevertheless, plaintiff made several attempts to vitiate his resignation. The first was a June 1994 request for an inter-service transfer to the U.S. Army, which plaintiff claims he submitted as a means of canceling his VSI application. In order to transfer successfully to the regular Army, however, plaintiff needed a recommendation from his supervisor. It is alleged that Col. Boak received plaintiff's request and refused to provide the necessary recommendation, claiming an inter-service transfer would permit plain-

tiff to avoid the "deal" with Brig. Gen. Mutter. Consequently, plaintiff withdrew his inter-service transfer request. Pl. Opp'n at 14.

On August 9, 1994, plaintiff wrote to a United States Senator, explaining that he was "[a]cting under duress [when he] applied for the ... VSI program ... [and that] [t]he decision to accept the VSI and separate from the Marine Corps [was] a decision [plaintiff] deeply regretted having made." Admin.R. at 31. Plaintiff requested that the Senator intervene and delay Capt. Gallucci's separation from the Marine Corps for 120 days. Admin.R. at 31.

On August 23, 1994 plaintiff was notified that his resignation had been approved and that his date of separation would be September 15, 1994. It is unclear from the documents submitted to the court precisely what response was solicited by plaintiff's correspondence with the Senator's office. However, three days later, on August 26, 1994, plaintiff's wife prepared a fax to the offices of the Senator reiterating her husband's request for congressional intervention to permit Capt. Gallucci to serve in the Marine Corps for an additional 120 days. Mrs. Gallucci also asked the Senator to intervene to withdraw plaintiff's VSI application.

Thereafter, plaintiff and his family were moved to Camp Pendleton in California for separation processing. On September 9, 1994, for the first time, plaintiff submitted a request through Marine channels to withdraw his resignation. On September 15, 1994, plaintiff's request to withdraw his resignation was denied by the CMC because "it ha[d] been determined that the request for separation was made voluntarily." Admin.R. at 80. Plaintiff was honorably discharged from the active Marine Corps and accepted a commission as Captain in the Marine Corps Reserve. Plaintiff added his own written statement to the Certificate of Release or Discharge from Active Duty in which he stated:

> "I signed VSI package/separation in protest. Accepted VSI under direction of supervisors in Okinawa. I am in the process of appealing my case to the BCNR."

Admin.R. at 16.

On November 26, 1994 plaintiff petitioned the BCNR to reinstate him as a regular commissioned officer in the Marine Corps and for related relief. Plaintiff argued that his resignation was involuntary and coerced by the actions of Brig. Gen. Mutter, Col. Boak and Lt. Mercier. Concurrently, plaintiff appealed to a member of Congress with several letters urging her to pressure the BCNR to process his case quickly.

On January 30, 1996 a comprehensive letter was issued by the BCNR, announcing their conclusion that since plaintiff had voluntarily separated from the Marine Corps, his resignation would not be disturbed. Each of Capt. Gallucci's assertions of duress, coercion and misrepresentation were addressed as well as the allegedly wrongful denial of plaintiff's request to withdraw his resignation. The BCNR cited factual and legal support for each of their conclusions. Admin.R. at 188–89.

Further, the BCNR noted that Marine Corps regulations require that an application for withdrawal of a resignation must be made at least 45 days prior to the scheduled separation date. Plaintiff had applied to withdraw his VSI application on September 9, 1994, six days prior to his scheduled separation. Although the issue of compliance with the regulation was not raised at the time Capt. Gallucci's request to withdraw his resignation was denied, the BCNR noted that the 45 day rule supported the CMC's conclusion that plaintiff's voluntary separation from military service was not rendered involuntary by Capt. Gallucci's claims of coercion, duress, time pressure, misrepresentation, or the summary denial of his request to withdraw his resignation.

### The Parties' Contentions

Plaintiff filed a complaint on February 5, 1998, challenging the BCNR's denial of relief and requesting the Court of Federal Claims to (1) declare the discharge of Capt. Gallucci on September 15, 1994 to be arbitrary and capricious; (2) set aside the NJP; (3) reinstate plaintiff to active duty with back pay; and (4) order defendant to correct plaintiff's military records to delete all references to his NJP reports.

Defendant urges that, pursuant to RCFC 12(b)(1), this court does not have jurisdiction over the matter because plaintiff voluntarily resigned from the Marine Corps. Furthermore, defendant argues that even if this court did have jurisdiction over plaintiff's claims, the request to set aside the NJP and expunge any related fitness reports fails to state a cause of action upon which relief may be granted. Defendant argues these requests must be dismissed as a matter of law pursuant to RCFC 12(b)(4) because plaintiff, having elected to seek administrative review of his case must also seek correction of his records from the BCNR as well. Alternatively, defendant moves for summary judgment upon the administrative record pursuant to RCFC 56.1.

Capt. Gallucci opposed defendant's motion, arguing that this court has jurisdiction over this matter because his application to the VSI program was forced and his discharge was involuntary. Plaintiff alleges he can prove his resignation was involuntary because (1) his separation from the Marine Corps was coerced by his supervisors; (2) he was misled to believe that his VSI application was final and irrevocable; (3) he was forced to make his resignation decision under time pressure; and (4) he attempted to withdraw his resignation but was unsuccessful. Contingent upon a finding that plaintiff involuntarily resigned, this court is asked to find that the military acted arbitrarily and capriciously, abused its discretion and violated its own procedures by soliciting and enforcing Capt. Gallucci's request to resign. Plaintiff also argues that he was denied the opportunity to appeal the NJP and now asks this court to order the NJP to be set aside and remove all notations regarding same from his personnel file. Furthermore, plaintiff has cross-moved for summary judgment upon the administrative record pursuant to RCFC 56.1.

### DISCUSSION

#### I. Subject Matter Jurisdiction

As a threshold matter, this court must determine whether it has subject matter jurisdiction over Capt. Gallucci's claims.

It is well established that claims for military pay and allowances are adjudicated in this court so long as plaintiff can establish as a preliminary matter that his resignation was involuntary. *Sammt v. United States,* 780 F.2d 31, 33 (Fed.Cir.1985).

The burden of proving jurisdiction rests with plaintiff. *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991); *Reynolds v. Army & Air Force Exchange Svc.,* 846 F.2d 746, 748 (Fed.Cir.1988). In order to evaluate the merits of defendant's motion asserting lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the allegations of the complaint must be construed favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, if the defendant challenges the truth of the jurisdictional facts alleged in the complaint, the court may expand its consideration of evidence beyond the pleadings. *Bergman v. United States,* 28 Fed.Cl. 580, 584 (1993) (holding court may consider evidentiary matters outside the pleadings in deciding motion pursuant to RCFC 12(b)(1)). "The court should look beyond the pleadings and decide for itself those facts, even in dispute, which are necessary for a determination of [the] jurisdictional merits." *Pride v. United States,* 40 Fed.Cl. 730, 732 (1998) (quoting *Farmers Grain v. United States,* 29 Fed.Cl. 684, 686 (1993)).

 In order to establish involuntary separation from the military, an officer bears the burden of overcoming the well accepted presumption that resignations from the military are voluntary. *Christie v. United States,* 207 Ct.Cl. 333, 338, 518 F.2d 584, 587 (1975). To defeat the presumption of voluntariness the plaintiff must show facts and circumstances demonstrating that the resignation was either: (1) secured through duress or coercion; (2) submitted under time pressure; (3) obtained via an intentional misrepresentation by the government upon which plaintiff relied to his detriment; or (4) secured under circumstances in which plaintiff failed to understand the situation due to mental incompetence. *See generally, Bergman,* 28 Fed.Cl. 580; *Christie,* 207 Ct.Cl. 333, 518 F.2d 584; *Perlman v. United States,* 203 Ct.Cl. 397, 490 F.2d 928 (1974). Alterna-

tively, under certain circumstances plaintiff may defeat the presumption of voluntariness by demonstrating that he made an attempt to withdraw the resignation before the effective date, but was summarily refused. *Cunningham v. United States,* 191 Ct.Cl. 471, 481, 423 F.2d 1379, 1384–85 (1970); *see also Scharf v. Department of the Air Force,* 710 F.2d 1572, 1574 (Fed.Cir.1983). In arguing that his resignation was involuntary despite his signed affirmation to the contrary, plaintiff relies on every one of these exceptions. Each of these contentions is discussed in turn below.

### (a) Duress/Coercion

 In order to avail himself of the duress/coercion exception to the presumption of voluntariness, plaintiff must prove each element of the three prong test established in *Christie v. United States,* 207 Ct.Cl. 333, 518 F.2d 584 (1975) and its progeny. *Nickerson v. United States,* 35 Fed.Cl. 581, 586 (1996), *aff'd,* 113 F.3d 1255 (Fed.Cir.1997). The plaintiff must demonstrate that: (1) one side involuntarily accepted the terms of another; (2) circumstances permitted no other alternative; and (3) said circumstances were the result of coercive acts of the opposite party. *Christie,* 207 Ct.Cl. at 338, 518 F.2d at 587; *see also, Scharf,* 710 F.2d at 1574–75; *Nickerson,* 35 Fed.Cl. at 586; *Clifton v. United States,* 31 Fed.Cl. 593, 597 (1994), *aff'd,* 66 F.3d 345 (Fed.Cir.1995); *Bergman,* 28 Fed.Cl. at 585 (1993); *Longhofer v. United States,* 29 Fed.Cl. 595, 601 (1993); *McIntyre v. United States,* 30 Fed.Cl. 207, 211 (1993); *McGucken v. United States,* 187 Ct. Cl. 284, 289, 407 F.2d 1349, 1351, *cert. denied,* 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969). However, the exercise of an option to resign from the military is not rendered involuntary merely by the imminent imposition of a less desirable alternative. *Sammt,* 780 F.2d at 32.

 Plaintiff concedes in his signed statement that he voluntarily submitted his application for resignation under the VSI program, but claims he only did so "in protest," as a means to avoid the possibility that Brig. Gen. Mutter would make a recommendation to the Marines that plaintiff be admin-

istratively separated. Pl. Opp'n at 26–30; Admin R. at 55. The mere insertion of the words "in protest" is not sufficient to transform an otherwise voluntary resignation into an involuntary separation. *Longhofer,* 29 Fed.Cl. at 602. Furthermore, being threatened with discharge does not vitiate consent to an alternative elective discharge. *Bruton v. United States,* 34 Fed.Cl. 347, 352 (1995), *aff'd,* 92 F.3d 1206 (Fed.Cir.1996); *Bergman,* 28 Fed.Cl. at 587.

To bolster his claim of coercion and duress, plaintiff alleges that Brig. Gen. Mutter, Col. Boak, and Lt. Mercier created circumstances under which plaintiff perceived no choice but to separate from the Marine Corps under the VSI program. Plaintiff points to several specific interactions and comments made by these three officers: First, Capt. Gallucci complains that after imposing NJP, Brig. Gen. Mutter offered only two choices, either to leave the service voluntarily or to face the results of a recommendation for administrative separation. Plaintiff was not offered the option of electing to remain a member of the active Marines without facing such a recommendation. Further, after Brig. Gen. Mutter announced her intended course of action, her Staff Judge Advocate ("SJA"), Lt. Mercier, met with plaintiff to discuss the available options. Lt. Mercier allegedly encouraged Capt. Gallucci to apply for the VSI package and voluntary resignation. Pl.Compl. ¶ 15. In addition, Brig. Gen. Mutter's Chief of Staff, Col. Boak, told plaintiff that, in his opinion, Capt. Gallucci was unlikely to pass an administrative separation board on Okinawa. Col. Boak also declined to provide an recommendation for inter-service transfer which would have permitted Capt. Gallucci to be reassigned to the Army and thus avoid resignation. Pl.Compl. ¶ 26.

Plaintiff's subjective interpretation of his interactions with Brig. Gen. Mutter, Col. Boak, and Lt. Mercier was that he was left with no choice but to leave the Marines under the VSI program. However, legal precedent requires an objective determination of whether Capt. Gallucci's resignation was voluntary, not by examining his subjec-tive perception of the situation, but rather, by examining the totality of circumstances with specific reference to whether plaintiff retained freedom of choice over his actions. *Longhofer,* 29 Fed.Cl. at 601; *Scharf,* 710 F.2d at 1574; *see also Perlman,* 490 F.2d at 933; *McGucken,* 187 Ct.Cl. at 289, 407 F.2d 1349. The key element in evaluating voluntariness is whether plaintiff exercised his own free will in deciding to resign. *Longhofer,* 29 Fed.Cl. at 601–02; *Sammt,* 780 F.2d at 32.

█ Having examined all the facts and circumstances presented, it is decided that plaintiff has failed to establish the second prong of the duress/coercion test. Capt. Gallucci may not have been offered an alternative which appealed to him but he did not lose his free choice to act. *Moyer v. United States,* 41 Fed.Cl. 324 (1998) (holding court is deprived of jurisdiction over matter in which officer voluntarily resigned notwithstanding entitlement to disability benefits); *see e.g. Bergman,* 28 Fed.Cl. at 585(1993); *Longhofer,* 29 Fed.Cl. at 601–02; *Sammt,* 780 F.2d at 32. Capt. Gallucci alleges he was subjected to speculation and advice from other officers as to the probable success or failure of rebutting the Brigadier General's recommendation before an administrative separation board. However, notwithstanding the advice and opinions of others, Capt. Gallucci had the option of remaining in the military and fighting the ramifications of a recommendation for administrative separation. *Christie,* 518 F.2d at 587. By electing to direct the terms of his resignation, to the extent possible through the VSI program, Capt. Gallucci freely chose to avoid the admittedly unappealing and risky alternative of serving until he was potentially separated involuntarily.

Had plaintiff served until administratively discharged, he may have been correct in arguing that his separation from the Marine Corps was involuntary. *Longhofer,* 29 Fed. Cl. at 602. However, the facts as alleged do not manifestly demonstrate the external coercion required for a finding of involuntariness. *Id.*[6]

---

6. We decline to follow the recent decision in *Canonica v. United States,* 41 Fed.Cl. 516 (1998).

Like Capt. Gallucci, the plaintiff in *Canonica* was offered the choice between retirement and invol-

### (b) Misleading Statements

 It is well established that a resignation will be considered involuntary if the government supplied deceptive information and an individual resigned in reasonable reliance upon that misrepresentation. *Covington v. Department of Health and Human Services,* 750 F.2d 937, 942 (Fed.Cir.1984) (holding that plaintiff's reliance upon agency's erroneous assertions amounted to involuntary retirement); *Scharf,* 710 F.2d at 1575 (counseling plaintiff that there are no adverse effects to electing optional retirement when in fact negative effects do exist renders an otherwise voluntary resignation involuntary). To prevail on such a claim, plaintiff must demonstrate that specific misinformation, inconsistent remarks, deception or improper advice were offered by the government agency. *Bergman,* 28 Fed.Cl. at 588–89; *Heaphy v. United States,* 23 Cl.Ct. 697, 700 (1991), *aff'd,* 972 F.2d 1355 (Fed.Cir. 1992). Further, plaintiff must show: (1) that a reasonable person would have been misled by the agency's statements and (2) detrimental reliance. *Scharf,* 710 F.2d at 1575.

 As with evaluating claims of coerced resignation, the facts and circumstances of the alleged deception must be viewed objectively and neither the subjective perceptions of the employee, nor the subjective intentions of the agency may be considered. *Scharf,* 710 F.2d at 1572; *Longhofer,* 29 Fed.Cl. at 603. (holding that if no reasonable person would have been misled by statements made, and in the absence of any misinformation, plaintiff's retirement may not be considered involuntary on the basis of misrepresentation).

 Capt. Gallucci asserts the Marine Corps misrepresented that VSI applications were final and irrevocable. Pl.Compl. ¶ 23–24. Specifically, plaintiff complains that he was not given express direction as to the procedures for withdrawing his VSI application. It is noted that plaintiff has not alleged that he requested clarification of this issue at any time.

Plaintiff makes a great deal of his subjective belief that there were no avenues available to him within the Marine Corps to permit him to withdraw his request to resign. In particular, Capt. Gallucci relies upon the Marine Corps' directive that a decision to select VSI was final and irrevocable and any request to withdraw his resignation would not ordinarily be granted. Pl.Compl. ¶ 23; Pl. Opp'n at 10; Admin.R. at 24, 114. Plaintiff contends that in reliance upon these representations he did not direct a request to withdraw his resignation to the CMC. Pl. Opp'n at 13. Instead he sought assistance outside the Marine Corps to attempt to force a cancellation of his VSI contract. Not until September 9, 1994, six days prior to his separation date, did Capt. Gallucci requested the Commandant of the Marine Corps ("CMC") to permit him to cancel his VSI application and withdraw his resignation. Pl. Opp'n at 16. The CMC denied the request.

Subsequently, Capt. Gallucci became aware of Marine Corps Order (MCO) 1900.16D, ¶ 5004.2 which states in relevant part:

> "When an officer's resignation has been accepted by the Secretary of the Navy, the officer shall be separated from the service at a date specified by the [Commandant of the Marine Corps]. A request for withdrawal of a resignation may be made at any time prior to 45 days from the effective date of the resignation or commencement of separation leave...."

MCO 1900.16D, ¶ 5004.2

The crux of plaintiff's argument is that he received insufficient information regarding the VSI program prior to making his decision to resign because he was not informed of this 45 day rule. Therefore, he claims, he was falsely informed that his VSI application was final and involuntary. Pl. Opp'n at 21. Furthermore, it is alleged that the Marine Corps breached an affirmative duty to counsel with regard to plaintiff's right to request withdrawal of his resignation. Pl. Opp'n at 21.

---

untary discharge. The finding that plaintiff's selection of one of three options pursuant to a mandatory retirement program amounted to an involuntary discharge from the military because

plaintiff was given an option regarding *how* he would retire rather than *whether* he would retire, is in our view, inconsistent with well-settled case law discussed above.

This court has considered an argument very similar to Capt. Gallucci's position in *Bergman v. United States,* 28 Fed.Cl. 580 (1993). In *Bergman* an officer was offered the opportunity to resign voluntarily pursuant to the VSI program in order to avert a possible removal action. Mr. Bergman applied for VSI with the understanding that if his challenge of an administrative board decision were successful, his simultaneously pending VSI contract would be canceled. *Id.* at 588. Mr. Bergman was also advised, by an expert in military personnel rights, that an unfavorable decision by the administrative board would not be appealable. *Id.* However, Mr. Bergman was not told of his right to recourse in this court. *Id.* The administrative board ultimately ruled against Mr. Bergman and he retired pursuant to VSI. *Id.* Subsequently, Mr. Bergman became aware that he could have appealed the administrative board's decision in federal court. He complained that his resignation was involuntary because he was not fully informed of his appellate rights and did not appeal the administrative board's decision because he believed he was precluded from doing so. *Id.* at 589. It was determined in *Bergman* that based upon the accuracy of the statements made by the military personnel, and relied upon by Mr. Bergman, the mere failure to provide information regarding appellate rights does not rise to the level of actionable misrepresentation unless the military has given misinformation and failed to correct that mistake by supplying the correct data. *Id.* at 589.

Under the facts presented here, it is arguable that Capt. Gallucci was not counseled regarding the 45 day rule. Further, it is conceivable that a reasonable Marine Corps Captain would not have been aware of the regulation. However, the information and alleged statements upon which Capt. Gallucci complains he detrimentally relied are supported by the Administrative Record as truthful statements. Specifically, Capt. Gallucci complains that he was told that if he selected VSI, Brig. Gen. Mutter would not recommend that he be administratively separated. This statement was true and is supported by Brig. Gen. Mutter's report stating that based upon plaintiff's election to accept VSI, she did not recommend administrative separation. Admin.R. at 220–21. Capt. Gallucci was also informed that VSI applications were final and irrevocable and that any request to withdraw the resignation would not normally be approved. Based upon the Administrative Record and the allegations asserted by plaintiff, this was not a false statement. Plaintiff does not allege that he was advised not to make an application to withdraw the VSI application, just that it would be difficult and unlikely that such a request would be granted. Pl. Opp'n at 10, 13.

Essentially, Capt. Gallucci faced a situation similar to that faced by the plaintiff in *Bergman:* he was not misinformed with regard to the procedure for avoiding the VSI contract but he also did not seek and therefore was not provided with a detailed road map for doing so. Plaintiff cannot be granted relief simply because he failed to more fully educate himself as to the law, and later wishes to revisit his voluntary choice. *Id.; cf. Heaphy* 23 Cl.Ct. at 703 (holding plaintiff who was fully apprised of his rights and options with regard to retirement application but failed to seek further information as to consequences of decision exhibited no signs of misrepresentation and made voluntary retirement decision); *Longhofer,* 29 Fed.Cl. at 603 (holding that in the absence of misrepresentation plaintiff's retirement was not involuntary if no reasonable person would have been misled). Plaintiff has demonstrated that he failed to understand that he could request permission from the CMC to withdraw his application for voluntary resignation but that he should have submitted his request to the CMC at least 45 days prior to the scheduled separation date. However, plaintiff has not demonstrated that he detrimentally relied upon any misrepresentation by a government official or agency either in the form of inconsistent remarks or incorrect advice in making his decision to apply for resignation under the VSI program. *Bergman,* 28 Fed.Cl. at 589.

### (c) *Time Pressure*

██ The presumption of voluntariness may also be rebutted upon a finding that the employee was forced to submit a resignation

under time pressure. *Perlman,* 203 Ct.Cl. at 406, 490 F.2d at 932–33 (forcing plaintiff to decide in less than one day whether to resign renders resignation involuntary); *cf. McGucken,* 407 F.2d at 1351 (permitting plaintiff three days to decide whether to resign does not amount to involuntary resignation due to time pressure).

It is undisputed that plaintiff was first offered the alternative of electing VSI and voluntary resignation on April 25, 1994. Plaintiff was not asked to announce a decision until 17 days later, on May 12, 1994. In fact, Capt. Gallucci did not complete the VSI application until May 18, 1994. In spite of plaintiff's assertions that the choice of facing Brig. Gen. Mutter's recommendation for administrative separation carried uncertain consequences, Capt. Gallucci's claims of time pressure are without merit. A time frame of approximately three weeks within which to make a decision does not constitute a time pressured decision. *Perlman,* 203 Ct.Cl. at 406, 490 F.2d 928; *McGucken,* 407 F.2d at 1351; *Cf. Roskos v. United States,* 213 Ct.Cl. 34, 549 F.2d 1386, 1389 (1977) (finding that in situation in which plaintiff was forced to relocate immediately and without due discretion by management, employee's resignation was deemed involuntary). Capt. Gallucci had sufficient time to seek counsel, discuss the matter with family, friends and advisors and thereafter to carefully consider his options on his own.

Furthermore, plaintiff's argument that his resignation decision was time pressured because he was allotted less time to decide whether to resign than Brig. Gen. Mutter allocated to submit her recommendation regarding administrative separation has been carefully considered and is found to be meritless. Plaintiff was aware that he might be subject to a recommendation for administrative separation processing but that he could avoid that situation if he elected voluntary resignation under the VSI program. Plaintiff was given sufficient time to consider his options and ultimately elected voluntary resignation in order to avoid any possibility that Brig. Gen. Mutter might recommend he be administratively separated. Plaintiff has not defeated the presumption of voluntariness by

arguing that he was allotted an insufficient amount of time to make his resignation decision.

**(d) Unsuccessful Attempt to Withdraw the Resignation**

In certain situations, the presumption of voluntariness has been rebutted upon a finding that plaintiff attempted to withdraw a resignation but was summarily refused by the agency. *Cunningham,* 423 F.2d at 1384 (1970) (interpreting Veteran's Preference Act and holding that employee's resignation is involuntary in situation in which plaintiff timely submits request to withdraw resignation and is denied without any demonstrable exercise of discretion). However, the mere fact that a request is denied does not automatically rebut the presumption of voluntariness. Plaintiff must also be able to demonstrate that all the conditions precedent to granting such a request were fulfilled. *Brown v. United States,* 30 Fed.Cl. 227, 230 (1993), *aff'd,* 26 F.3d 139 (Fed.Cir.1994) (upholding denial of untimely request to withdraw resignation); *see also Benton v. United States,* 6 Cl.Ct. 781, 790–91 (1984).

Capt. Gallucci does not contend that his request to withdraw his resignation was timely pursuant to the 45 day rule. In fact, Capt. Gallucci concedes that he did not make his request to the CMC until six days prior to his resignation. Accordingly, the denial of plaintiff's request to withdraw his resignation comports with the applicable Marine Corps regulations and cannot be held to have been wrongful.

Capt. Gallucci disputes the rationale of permitting a Marine regulation of which he was not aware to be the support for upholding his resignation as voluntary. However, plaintiff's arguments that he was unaware of the 45 day rule are unavailing in light of plaintiff's failure to educate himself as to the procedure for withdrawing his VSI application. *Heaphy,* 23 Cl.Ct. at 703. Ignorance of the law is not accepted as an excuse for failure to comply. *Id.*

**(e) Mental Incompetence**

A further exception to the presumption of voluntariness exists in cases in which

plaintiff was emotionally disturbed and incapable of understanding his actions. *Manzi v. United States*, 198 Ct.Cl. 489, 492 (1972).

 Capt. Gallucci suggests he was under severe mental stress and anxiety and was undergoing mental counseling at the time he submitted his VSI application. Pl. Sur–Reply at 9–10. However, this assertion alone is not sufficient to rebut the presumption that his resignation was voluntary. Plaintiff does not contend and the record does not indicate that plaintiff was in any way incapable of exercising free will or understanding his actions at the time he submitted his VSI application. Accordingly, plaintiff fails to rebut the presumption of voluntariness as a result of any mental incompetence. *McEntee v. United States*, 30 Fed.Cl. 178, 184 (1993), *aff'd*, 39 F.3d 1197 (Fed.Cir.1994) (holding assertion of mental incompetence insufficient to defeat presumption of voluntariness in absence of doctor's opinion or other evidence of mental incompetence)

Having examined each of the parties' claims, the court must conclude that there is no basis for finding plaintiff's resignation from the United States Marines Corps was anything but voluntary. Accordingly, under the precedent established in *Sammt v. United States*, 780 F.2d 31 (Fed.Cir.1985), the Court of Federal Claims lacks subject matter jurisdiction over this matter and is precluded from granting the relief plaintiff requests.

## II. The BCNR's Decision is Supported By Substantial Evidence

Plaintiff argues that the Board of Corrections of Naval Records acted in an arbitrary and capricious manner when it upheld the CMC's finding that Capt. Gallucci's decision to resign was voluntary. Even assuming, *arguendo*, that this court had jurisdiction over the matter as alleged in the complaint, the BCNR's conclusion has the requisite support in the record.

The scope of the court's review of the BCNR decision is restricted by the precept that "[d]etermining who is fit or unfit to serve in the armed forces is not a function of the judiciary." *McIntyre*, 30 Fed.Cl. at 213; *see also Dougharty v. United States*, 27 Fed.

Cl. 436 (1993), *aff'd*, 11 F.3d 1073 (1993). This court is precluded from substituting its judgment for that of a military department in cases in which reasonable minds could reach differing conclusions based upon the same evidence. *Heisig v. United States* 719 F.2d 1153, 1156 (1983); *Orloff v. Willoughby*, 345 U.S. 83, 93, 73 S.Ct. 534, 97 L.Ed. 842 (1953) ("judges are not given the task of running the [military]"); *Sanders v. United States*, 219 Ct.Cl. 285, 298, 594 F.2d 804, 811 (1979).

 The court's power to review a military department's decision is limited to determining whether the action was improper because it was "arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation or mandatory published procedure of a substantive nature by which plaintiff has been severely prejudiced." *McIntyre*, 30 Fed.Cl. at 213; *Clayton v. United States*, 225 Ct.Cl. 593, 595 (1980); *Heisig*, 719 F.2d at 1156. The court will not intervene as long as substantial evidence exists to support the BCNR's decision. *Nickerson*, 35 Fed.Cl. at 591. Generally, once a plaintiff has sought relief from [a] correction board, plaintiff is bound by that determination unless he can meet the difficult standard [necessary] ... to prove the decision was improper. *Sanders*, 219 Ct.Cl. at 298, 594 F.2d at 811. In order for the court to reverse the decision of a military department regarding a member's fitness for duty, the evidence that the decision was improper must be clear and convincing. *Nickerson*, 35 Fed.Cl. at 590; *Dorl v. United States*, 200 Ct.Cl. 626, 633, 1973 WL 21334 (1973) (holding court will not overturn decision of Correction Board without proof that decision was not supported by substantial evidence).

 The BCNR reviewed plaintiff's application for reinstatement on the basis of his claim that he had been involuntarily discharged. At the time of plaintiff's petition, the Board considered: (1) Capt. Gallucci's application for BCNR review of his separation from the Marine Corps together with all materials submitted in support thereof, including plaintiff's own version of the facts and circumstances which led to his decision and the imposition of the NJP; (2) Capt.

Gallucci's subsequent application for VSI and voluntary resignation; (3) statements of the facts and circumstances surrounding plaintiff's separation from the Marine Corps as solicited by the BCNR from the three Marines alleged to have coerced and pressured Capt. Gallucci to resign, namely, Brig. Gen. Mutter, Col. Boak and Lt. Mercier; (4) plaintiff's entire service record; (5) an advisory opinion from Headquarters Marine Corps; (6) the applicable statutes, regulations and policies; and (7) a memorandum from the Head of the BCNR's Discharge Review Section.

Based upon the court's review of these same documents and the Administrative Record it is concluded that it was reasonable for the BCNR to conclude that plaintiff's discharge was voluntary and not wrongful. *Nickerson*, 35 Fed.Cl. at 591. That decision was well supported by substantial evidence and was not otherwise arbitrary, capricious or an abuse of discretion. *Id.*

### III. Plaintiff's Request to Set Aside the NJP and the Strike All Documents Relative to the NJP from Plaintiff's Personnel File

 The over-riding theme in this case is that after punishment was levied at the NJP hearing, plaintiff unhappily chose to voluntary resign his commission as a Captain in the U.S. Marine Corps pursuant to the VSI program in order to avert the possibility of an unfavorable recommendation for administrative separation. The NJP consisted of (1) a $1,000 fine; and (2) the entry of a punitive LOA in plaintiff's personnel file. Although the choice between voluntary resignation and administrative separation from the Marine Corps was not part of the NJP, the imposition of that punishment was the impetus for Brig. Gen. Mutter's directive that plaintiff choose between those two alternatives. Plaintiff submitted a rebuttal to the LOA and later appealed the issue of the voluntariness of his resignation to the BCNR. Plaintiff concedes that he was counseled with regard to his appellate rights but declined to appeal the NJP asserted against him on April 25, 1994 before the BCNR. Nevertheless, Capt. Gallucci now requests this court to set aside

that punishment and to amend plaintiff's military records so that all remarks relative to the NJP be removed.

Defendant argues that this portion of the complaint must be dismissed pursuant to RCFC 12(b)(4) for failure to state a claim upon which relief may be granted. It is well established that in evaluating jurisdictional grounds pursuant to RCFC 12(b)(4) the dispositive issue "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim." *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683.

Legal precedent dictates that it is inappropriate for this court to review on appeal, new issues which should have been brought to the attention of the administrative agency competent to hear it, in this case, the BCNR. *Doyle v. United States*, 220 Ct.Cl. 285, 599 F.2d 984, 1000, *cert. denied*, 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980); *Laningham v. United States*, 30 Fed.Cl. 296, 315 (1994) (holding plaintiff was precluded from raising issue of promotion for the first time on appeal because it was not properly ventilated administratively before court). A party is not entitled to many independent chances to prevail, and his voluntary choice determines the extent of the court's review. *Doyle*, 599 F.2d at 1000.

An appeal to a board for the correction of military records is not a statutorily mandated prerequisite to federal court jurisdiction. *Heisig*, 719 F.2d at 1155 (Fed.Cir.1983); *Palmer*, 38 Fed.Cl. at 324. However, having chosen to challenge the voluntariness of his resignation before the BCNR, the underlying matter of the NJP should also have been raised in that forum. Allowing a party to withhold important issues from the board and later present them to this court is impermissible. *Lizut v. Department of the Army*, 717 F.2d 1391, 1396 (Fed.Cir.1983) (holding that to permit party to withhold issues and later present them to court would undermine administrative board's authority); *see also Benton v. United States*, 6 Cl.Ct. 781, 791 (1984) (discussing attempt to raise issues before court not raised before administrative board). Plaintiff's argument that he was precluded from appealing the NJP in 1994

and will now be prejudiced by earlier proceedings before the BCNR if he is required to return to that administrative board with this issue have been carefully considered and are found to be unavailing. *Sanders*, 219 Ct.Cl. at 302, 594 F.2d 804 at 813 (1979) (forwarding presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith).

Accordingly, defendant's motion for dismissal of this issue pursuant to RCFC 12(b)(4) is granted. Plaintiff has failed to exhaust administrative remedies and therefore his request to set aside the NJP fails to state a claim upon which this court may grant relief because that issue should have been fully developed before the BCNR.

## CONCLUSION

It is determined, after careful consideration, that this court lacks subject matter jurisdiction because plaintiff, Anthony M. Gallucci voluntarily resigned from the U.S. Marine Corps. Accordingly, plaintiff's complaint must be dismissed pursuant to RCFC 12(b)(1). Further, plaintiff's request that this court issue an order setting aside the Non Judicial Punishment is not justiciable and must be denied pursuant to RCFC 12(b)(4) since the plaintiff failed to raise these issues before the Board for the Correction of Naval Records. Accordingly, it is **ORDERED** that final judgment be entered dismissing this matter. No costs.